USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/2022

MEMO ENDORSED

**MEMORANDUM ENDORSEMENT**

Calltrol Corporation v. LoxySoft AB et al.
7:18-cv-09026

The Court is in receipt of the attached letter from Defendants, dated September 23, 2022 (ECF No. 65), and Plaintiff's response, dated September 26, 2022 (ECF No. 66).

Defendants move to stay discovery, pending decision on Defendants' motion for summary judgment. Under Federal Rule of Civil Procedure 26(c), a district court may stay discovery "for good cause." Fed.R.Civ. P. 26(c). When a motion is pending, courts typically consider several factors in determining whether to stay discovery; including: "(1) whether a defendant has made a strong showing that the plaintiff s claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Negrete v. Citibank, N.A.,* No. 15–cv–7250 (RWS), 2015 WL 8207466 (S.D.N.Y. Dec. 7, 2015).

In their opening brief on their motion for summary judgment, Defendants seek dismissal of Plaintiff's claims based on, *inter alia*, Plaintiff's alleged inability to quantify its damages. (*See* ECF No. 45 at 3–4.) However, Defendants have refused to provide discovery responses as to that issue. Plaintiff argues in its opposition brief to the motion for summary judgment that discovery is ongoing, that Plaintiff's damages will be primarily determined from financial documents requested but not yet received from Defendants, and that Plaintiff cannot quantify its damages in this case until Defendants produces the requested documents. (ECF No. 49 at 7.) In its September 26, 2022 letter, Plaintiff also argues that the sales by Defendant in violation of restrictive covenants under the Reseller Agreement are closely tied to the damages suffered by Plaintiff resulting therefrom. (ECF No 66 at 2.)

Notably, on August 10, 2022, Magistrate Judge Davison granted Plaintiff's motion to compel discovery, finding that Plaintiff was entitled to discovery on financial documents regarding their sales of non-exempt competing contact center products under the parties' Reseller Agreement.

Having considered the arguments in the parties' letters, and in light of Judge Davison's August 10, 2022 Order, the Court DENIES Defendants' letter motion to stay and directs Defendants to comply with Judge Davison's Order.

The Clerk of the Court is kindly directed to terminate the motion at ECF No. 65.

Dated: October 5, 2022
White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE



Wrobel
Markham
LLP

1407 Broadway, Suite 4002
New York, NY 10018
Telephone: (212) 421-8100
Fax: (212) 421-8170

**Jodie Gerard, Esq.**
gerard@wmlawny.com

September 23, 2022

***Via ECF***
The Honorable Nelson S. Román
United States District Judge, Southern District of New York
The Honorable Charles L. Brieant Jr. United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Re: *Calltrol Corporation v. LoxySoft AB et al.*, Case No. 7:18-cv-09026 (NSR) (PED)

Dear Judge Román:

This firm represents defendants LoxySoft AB and LoxySoft Inc. (together, "LoxySoft" or "Defendant") in the above-referenced matter. We respectfully request that the Court stay further discovery pending the Court's determination on LoxySoft's pending motion for summary judgment, which was fully briefed and submitted as of August 2, 2022. *See* ECF Nos. 43 - 64.[1] As set forth herein, there is good cause to stay further discovery in this matter because, *inter alia*, Plaintiff has wasted four years of judicial resources pursuing an untimely breach of contract claim that, even if timely, fails because the alleged breach did not result in any damages to Plaintiff.

**Background**

In its Complaint, filed on October 6, 2018, Plaintiff asserted five causes of action against LoxySoft: (1) breach of contract against LoxySoft AB; (2) tortious interference with prospective economic benefit; (3) unfair competition; (4) deceptive business practices under New York General Business Law § 349; and (5) unfair competition and reverse passing off under the Lanham Act 43(a) 14 U.S.C. §1125(A).

LoxySoft moved for dismissal of Plaintiff's Complaint, and by Opinion and Order dated December 16, 2021, this Court dismissed all claims, except for Plaintiff's breach of contract claim. *See ECF No. 26, p. 8*. As to the breach of contract claim, this Court held that "[a]s it is not clear from Plaintiff's complaint or the Reseller Agreement that its breach of contract claim is untimely, dismissal is inappropriate at this stage." *Id.* at 5.

The parties subsequently engaged in discovery, during which LoxySoft served Plaintiff with discovery requests seeking Plaintiff's evidence in reply to LoxySoft's statute of limitations

[1] Plaintiff filed a letter to Magistrate Judge Paul E. Davison seeking to compel discovery on July 25, 2022 (ECF No. 38). At an August 10, 2022 conference, Magistrate Judge Davison granted Plaintiff's motion to compel and stated that LoxySoft may appeal His Honor's decision or move to stay. We filed a pre-motion letter to Magistrate Judge Davison requesting leave to move to stay (ECF No. 62), and, at a September 16, 2022 status conference, Magistrate Judge Davison directed that Loxysoft either make the instant application to Your Honor or comply with His Honor's August 10th Order.

defense and in support of Plaintiff's alleged claim for damages.[2] In response, Plaintiff failed to produce *any* documentary proof regarding these matters, and Plaintiff's counsel then conceded in a May 9, 2022 email that it has "produced all documents in its possession and control required under Rule 26 and in response to defendants' discovery requests." *See* ECF No. 28 (May 9, 2022 email from Plaintiff's counsel).

After seeking permission, LoxySoft was granted leave by this Court to move for summary judgment. *See* ECF Nos 28, 31. In its motion, LoxySoft argues that summary judgment is appropriate because Plaintiff: (i) fails to offer any evidence of the existence of its damages, and (ii) fails to prove that its claim is within the statute of limitations. In opposition, Plaintiff claims that it needs information regarding LoxySoft's sales of "Contact Software Products" (*see* ECF No. 47-5, No. 2) to prove Plaintiff's damages from the alleged breach of contract – a proposition refuted by case law.

**Discovery Should be Stayed Pending Disposition of the Summary Judgment Motion**

The Court can stay discovery for good cause. Fed. R. Civ. P. 26(c). Factors to consider include: "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Am. Fed'n of Musicians & Employers' Pension Fund v. Atl. Recording Corp.*, No. 1:15-cv-6267, 2016 WL 2641122, at *1 (S.D.N.Y. Jan. 8, 2016) (internal quotation marks omitted).

**(1) Plaintiff's claim is without merit and time-barred**

In its motion for summary judgment, LoxySoft demonstrates that Plaintiff's claim is without merit because Plaintiff has not demonstrated any damages and, moreover, Plaintiff's claim is time-barred.

It cannot be disputed that, in order to prevail on a breach of contract claim, a plaintiff must demonstrate damages. *See Milan Music, Inc. v. Emmel Commc'ns Booking, Inc.*, 37 A.D.3d 206, 829 N.Y.S.2d 485, 486 (1st Dept. 2007). Plaintiff argues that it requires discovery of LoxySoft's sales to compute Plaintiff's damages: "[S]ince the measure of Plaintiff's damages will be primarily determined from financial documents requested but not received from Defendants, Plaintiff cannot quantify its damages in this case until Defendants produce the requested documents." *See* ECF No. 49 (Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment), p. 7. Contrary to Plaintiff's pleas for discovery, the case law is clear that, to establish damages for a breach of contract claim, a party must present evidence of its own losses, not another's gains. *See Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 CV 293-LTS-RWL, 2019 U.S. Dist. LEXIS 167845, at *37 (S.D.N.Y. Sep. 27, 2019) ("Defendants' alleged gains are not the appropriate measure for breach of contract damages."); *Gomez v. Bicknell*, 302 A.D.2d 107, 115 (2d Dept. 2002) ("For the contractual damages of breach of the noncompetition obligation, [a plaintiff] must prove its own loss of profits, not what the

[2] Plaintiff likewise served document demands and interrogatories, and LoxySoft timely served responses and objections and a document production on April 22, 2022. *See* ECF Nos. 47-5 and 47-6 (Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production and Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories, respectively).

[defendant's] profits were.") *Id.* (internal citations omitted). Accordingly, Plaintiff's argument that it needs to know what LoxySoft's sales were in order to demonstrate that Plaintiff suffered losses is simply incorrect as a matter of law.

Additionally, Plaintiff failed to prove that its breach of contract claim is within the six-year statute of limitations. Plaintiff neither produced evidence demonstrating that the parties' business relationship continued after July 2012 nor disputed the fact that the parties mutually abandoned the contract over six years prior to the commencement of the lawsuit. *See Savitsky v. Sukenik*, 240 A.D.2d 557, 559 (2d Dept. 1997) ("[T]he refusal of one party to perform his contract amounts to an abandonment of it, leaving the other party to his choice of remedies, but his assent to abandonment dissolves the contract so that he can neither sue for a breach nor compel specific performance.") (internal citations omitted)).

**(2) Plaintiff seeks extremely broad and burdensome discovery, which will have no impact upon LoxySoft's pending motion for summary judgment**

Plaintiff seeks information on LoxySoft's alleged sales in order to quantify its damages; however, as explained above, this discovery cannot satisfy the defective damages element of Plaintiff's breach of contract claim and will have no impact on the pending summary judgment motion.

Plaintiff also seeks, *inter alia*, all documents relating to Contact Center Products sold by Defendants in or from the United States since 2002, including but not limited to products for placing outbound calls (Document Request No. 2); all documents relating to the acquisition or development of any replacement software for Contact Center Products provided by Plaintiff to Defendants (Document Request No. 3); all communications from 2001 to the present between Defendants and the Plaintiff (Document Request No. 9); identification of all Contact Center Products sold by Defendants in or from the United States since 2002, including but not limited to products for placing outbound calls." (Interrogatory No. 1); identification of all customers to whom Defendants sold Contact Center Products in or from the United States since 2002 (Interrogatory No. 2); and Defendants' deposition. As stated in LoxySoft's objections to the aforementioned document demands and interrogatories, these requests are overbroad and ignore statute of limitations, the exclusionary language in the Reseller Agreement, and that the only remaining claim is against LoxySoft AB.

Moreover, to satisfy Plaintiff's discovery requests would be burdensome and costly, especially in this instance where the discovery will not have any impact upon the pending dispositive motion. *See Am. Booksellers Ass'n, Inc. v. Houghton Mifflin Co., No. 94 CIV. 8566 (JFK), 1995 WL 72376*, at *1 (S.D.N.Y. Feb. 22, 1995) (granting a stay of discovery pending ruling on a fully submitted dispositive motion: "The discovery sought by plaintiffs is very broad and to require defendants to respond to it at this juncture, when their motion to dismiss may be granted, would be extremely burdensome."); *see also Rivera v. Heyman*, No. 96 CIV. 4489 (PKL), 1997 WL 86394, at *1 (S.D.N.Y. Feb. 27, 1997) ("Given that disposition of the dismissal motion may significantly narrow, if not eliminate, the issues remaining in the case, proceeding with discovery while the motion is pending would waste the parties' resources and would constitute an undue burden on defendants.").

Because additional discovery will considerably burden LoxySoft but have no impact on the pending summary judgment motion, we ask that the Court stay discovery.

**(3) Plaintiff will not be prejudiced by a stay**

As set forth above, Loxysoft's motion for summary judgment is fully submitted and any discovery related to LoxySoft' sales will not impact the pending motion because Plaintiff has not demonstrated that its breach claim is timely or that it suffered any loss. *See Rivera*, 1997 WL 86394, at *1 ("A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue."); *see also Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94CIV.2120(LMM)(AJP), 1996 WL 101277, at *2 (S.D.N.Y. Mar. 7, 1996) ("Pursuant to Rule 26(c), it is clear that the Court has the discretion to stay discovery for "good cause," and that good cause may be shown where a party has filed (or sought leave to file) a dispositive motion such as a motion to dismiss. This is especially so where the stay is for a "short" period of time and the opposing party (here, plaintiff) will not be prejudiced by the stay." (internal citations omitted).

If Plaintiff's action survives summary judgment, the parties will be able to resume discovery at no prejudice to Plaintiff and proceed with the litigation. On the other hand, if discovery is not stayed, LoxySoft will be forced to expend considerable time and resources to produce additional discovery in response to Plaintiff's broad discovery requests when summary judgment may dispose of the entire litigation. Accordingly, we ask that the Court stay discovery pending its disposition on LoxySoft's summary judgment motion.

**Conclusion**

LoxySoft's pending summary judgment motion exposes that Plaintiff's case has zero merit. For the reasons set forth herein and in the interest of judicial economy, we respectfully request that the Court stay discovery pending the Court's decision on LoxySoft's motion for summary judgment.

Respectfully yours,

Jodie Gerard

cc: The Honorable Paul E. Davison (via ECF)
Jean-Marc Zimmerman, Esq. (via ECF)

# ZIMMERMAN LAW GROUP

ATTORNEYS AT LAW
153 CENTRAL AVENUE
P.O. BOX 2653
WESTFIELD, NJ 07090
TEL: (908) 768-6408
FAX: (908) 935-0751
www.zimllp.com

WRITER'S E-MAIL
jmz@zimllp.com

September 26, 2022

Via ECF
Hon. Nelson S. Roman, U.S.D.J.
Hon. Charles L. Brieant, Jr. United States Courthouse
300 Quarropas Street
White Plains. NY 10601

Re: *Calltrol Corporation v. LoxySoft AB et al.*, Case No. 7:18-cv-09026

Dear Judge Roman:

We represent Plaintiff Calltrol Corporation and write in opposition to the LoxySoft Defendants' letter to Your Honor dated September 23, 2022 (Dkt. No. 65), requesting that the Court stay further discovery pending the Court's determination of the Defendants' fully briefed motion for summary judgment (Dkt. Nos. 43-64).[1]

Defendants' request has already been twice considered and twice denied by Magistrate Judge Paul E. Davison, i.e., on August 10, 2022, and September 16, 2022, respectively. Defendants' third request now pending before Your Honor presents no new additional arguments that support staying Judge Davison's August 3, 2022, ruling (issued after oral argument) that they produce financial documents requested by Plaintiff regarding their sales of non-exempt competing contact center products under the Reseller Agreement (copy attached hereto as Exhibit 1). Their request therefore should be denied for the reasons previously set forth by Judge Davison.

[1] Contrary to Defendants' assertion, Plaintiff has not "wasted four years of judicial resources" in pursuing this matter. It is Defendant that has repeatedly sought judicial intervention, without advancing this case by providing significant discovery towards resolving the merits of the case. Plaintiff timely filed this action when it learned that Defendants breached their obligation under Paragraph 6.3 of the Reseller Agreement not to sell non-exempt competing products =, within the New York State six-year breach of contract statute of limitations applicable in this case pursuant to Paragraph 8.2 of the Reseller Agreement.

Defendants repeat numerous arguments they previously made to oppose Plaintiff's request to compel discovery, that were already considered and twice rejected, e.g., Plaintiff's purported inadequate quantification of damages – which argument ignores the fact that the information sought by Plaintiff is solely in the Defendants' possession and is "relevant to [its] claim . . . and proportional to the needs of the case, considering . . . the parties' relative access to" such information which cannot "be obtained from some other source that is more convenient." See Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(C)(i).

Defendants are incorrect in their assertion that a claim for contractual breach of restrictive covenants require that Plaintiff present full evidence of its damages prior to discovery into the activities of Defendants. Plaintiff has presented prima facie evidence of the breaches of the restrictive covenants, and the sales by Defendant in violation of those restrictive covenants are closely tied to the damages suffered by Plaintiff resulting therefrom.

For example, Schedule B to the Reseller Agreement between the parties provides for a payment per "port" per year, and therefore Plaintiff's damages are based on at least the number of ports (or their equivalent) used or provided by Defendants in violation of the Reseller Agreement, and the duration of their use or availability.

Defendants' request should also be denied because Defendants have withheld routine discovery into their product sales, preventing Plaintiff from presenting facts quantifying its damages essential to justify its opposition to the motion for summary judgment, i.e., Defendants' sales of non-exempt competing products (and the resulting damages), since such facts are not public and therefore unavailable to Plaintiff absent their production by Defendants. Consequently, Defendants' motion is likely to be denied as deficient under Fed. R. Civ. P. 56(d) (i), (ii) and/or (iii).

Plaintiff disputes numerous assertions put forth by Defendants that demonstrate the existence of genuine issues of material fact being in dispute that preclude summary judgment and instead warrant discovery. For example, Plaintiff disputes Defendants' assertion that the non-compete clause of the Reseller Agreement is not in effect because they do not have "custody or access to any of Calltrol's Products" and Plaintiff therefore has no claim, since Defendants continue to retain custody and access of software developer kit they obtained from Plaintiff as alleged in Paragraph 15 if the Complaint. Defendants have provided no discovery that would undermine Plaintiff's plausible allegation that Defendants remain in possession of the software developer kit. Therefore, at this stage of the proceeding, it must be presumed that Defendant had, and continues to have, access to Plaintiff's software developer kit, which includes substantial confidential information justifying imposition of a non-compete obligation which was accepted by Defendants and never terminated.

Defendants newly argue, without evidence, that they repudiated the Reseller Agreement with Plaintiff. However, they provide no evidence supporting that repudiation, but rather assert that mere silence bespeaks mutual agreement to terminate the Reseller Agreement. However, Defendants have never returned the confidential

information provided by Plaintiff, never accounted for its use, have not demonstrated absence of continued use, and do not address why the noncompete provision does not remain in force. Therefore, the motion for summary judgement is likely to be denied given the disputed material issues of fact that remain outstanding.

Likewise, Plaintiff disputes Defendants' assertion that its breach of contract claim is without merit or time-barred because the Reseller Agreement failed to automatically renew each year, or because Plaintiff somehow abandoned such contract, or that Plaintiff failed to assert its contract claim within the six-year statute of limitations. Defendants are not obligated under such contract to purchase products from Plaintiff each year (nor is Plaintiff obligated to sell them products each year), therefore the contract automatically renewed each year pursuant to its terms as it was never terminated (Paragraphs 7.1 and 7.2), and Plaintiff did not abandon the contract. Defendants, however, had an obligation under the Reseller Agreement not to sell non-exempted competing products. When Plaintiff discovered that Defendants were in fact doing so in violation of the Reseller Agreement, it timely brought this suit.

Defendants' assertion that Plaintiff's request for documents regarding Defendants' sales of non-exempt competing products is somehow overbroad or burdensome is meritless since such documents, which are only in Defendants' possession, are essential to quantification of Plaintiff's damages and are therefore relevant to the case. Defendants have failed to explain how they will be burdened by having to produce records that are likely kept in electronic form.[2] In any case, Defendants have the option to provide the responsive documents that they concede to be relevant, and follow normal processes, such as meet-and-confer to negotiate the scope of production, and filing a motion for a protective order in the event of a failure to agree on the legitimate scope of discovery. Instead, Defendants seek to avoid disclosing any information regarding their sale of non-exempt competing products, either in their initial disclosures or in response to Plaintiff's discovery requests.[3]

Finally, Defendants have also failed to demonstrate that they will be prejudiced if the requested stay is denied, and they are required to produce the financial information requested by Plaintiff. This case has been ongoing since 2018, with the sales information at issue and the summary judgment motion only being filed this year. By contrast, Plaintiff will be damaged if it is unable to obtain the relevant sales information it seeks, which is only in Defendants' possession. The proposed stay perpetuates the undue delay

---

[2] Plaintiffs are only seeking damages information going back six-years from the filing of its Complaint in this matter, i.e., 2012. Consequently, Defendants' reference to Plaintiff's request for non-financial information going back to 2001-2002 is disingenuous.

[3] Discovery is not yet over in this case. No Case Management Plan and Scheduling Order has yet been entered in this case. Yet Defendants have nevertheless ignored or failed to adequately respond to various discovery requests made by Plaintiff for information regarding their sales of non-exempt competing products made in violation of the parties' Reseller Agreement. For example, Defendants failed to respond to: 1) discovery requests served on March 23, 2022; 2) request for meet and confer sent on May 20, 2022, regarding such failure/deficiency; 3) Rule 30(b)(6) Deposition Notice served on May 22, 2022; and 4) Proposed Confidentiality Stipulation and Order sent on May 22, 2022.

imposed by Defendant's refusal to comply with its discovery obligations and increases Plaintiff's costs.

      For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' request for leave to file a motion to stay discovery, and order Defendants to provide the requested sales information and otherwise proceed with discovery in this case.

Respectfully submitted,

/s/Jean-Marc Zimmerman

Jean-Marc Zimmerman

JMZ/bw
cc: All Counsel of Record via e-mail

# EXHIBIT 1

# Reseller Agreement

Agreement No. 1539

This Agreement is by and between Calltrol Corporation, ("Calltrol"), a New York corporation located at 400 Columbus Ave, Valhalla NY 10595, and

Loxy Soft AB ("Reseller").

WHEREAS, Calltrol is an authorized distributor of C.T. Ventures, Inc., ("CTV") software products and other third party products (collectively, the "Products") and, subject to the terms and conditions of this Agreement, desires to grant Reseller the right to market and resell the Products in conjunction with Reseller products and services of significant value; and

WHEREAS, Reseller is in the business of marketing and distributing computer-related products and desires to have the right to market and resell the Products.

NOW, THEREFORE, in consideration of the mutual promises set forth herein, the parties hereto agree as follows:

**1.0 General**

**1.1 License** Upon the terms and subject to the conditions of this Agreement, Calltrol hereby grants to Reseller a non-exclusive, non-transferable right and license to market and resell the Products identified in Schedule A. Reseller shall only resell the Products to end-users (the "End-Users") who enter into the applicable End-User License Agreement (attached as Schedules C and D) for use with a Calltrol-furnished enabling/disabling "dongle" which Calltrol shall enable for continued productive use of the Product(s) after full payment to Calltrol for the particular Product(s). The Products shall be in executable object code form only and Reseller and its customers shall have no right to the source code of such Products. Reseller shall not, and shall not permit its End-Users to, modify, translate, decompile, nor create or attempt to create, by reverse engineering or otherwise, the source code from the object code of the Products supplied hereunder, or adapt the Products in any way or for use to create a derivative work or in any way attempt to decode the copy protection key or otherwise defeat the operation of the "dongle". Reseller acknowledges that any third party Products, other than CTV proprietary product, will be provided subject to the applicable third party license.

**1.2 The Territory , Proprietary Rights** Reseller may market and resell the Products world wide. Reseller agrees that it will not permit the Products to be present in any country which does not respect the proprietary rights in the Products.

**1.3 License of the Software Developer's Kit** The Reseller shall be granted a license to use the Software Developer's Kit (the "SDK") under the terms and conditions of the Schedule D license but for the sole purpose of developing applications for its customers of other Products. If Reseller is authorized to resell use of the SDK, each authorized End-User must sign a license in the form of Schedule D and a fully signed copy will be forwarded to Calltrol prior to providing the End-User with access to the SDK. If Reseller is also an End-User of Products, Reseller must agree to the terms of the End-User License Agreement for each license Reseller uses as an End-User.

**1.4 Product Changes** Calltrol and its licensor retain the right, in its or their discretion, to upgrade or modify the Products from time to time. In addition, upon thirty (30) days prior written notice to Reseller, Calltrol may add or delete Products from Schedule A. Upon receipt of any such notice of an upgrade or modification, or upon the expiration of the notice period set forth above for additions or deletions, Reseller shall cease to market and resell earlier versions of the Products and/or Products deleted.

**1.5 Use of Trademarks and Trade Names** Any and all trademarks and trade names which Calltrol or CTV uses in connection with the license granted hereunder are and remain the exclusive property of Calltrol or CTV. Nothing contained in this Agreement shall be deemed to give Reseller any right, title or interest in any trademark or trade name of Calltrol or CTV relating to the Products. Subject to notice from Calltrol in writing, which modifies or cancels such authorization, during the term of this Agreement, Reseller may use the trademarks and trade names specified by CTV in writing for normal advertising and promotion of Products.

**2.0 Price, Payment and Shipment**

**2.1 Price** Prices to Reseller are as stated in Schedule B. Upon thirty (30) days prior notice to Reseller, Calltrol may increase or decrease the Prices upon written notice to Reseller.

**2.2 Orders, Payment, Shipment and Dongles** Upon Calltrol's receipt of a written order (each an "Order") together with a copy of a signed Software Developers Kit License Agreement if the End-User is to receive the SDK, Calltrol will ship to Reseller the designated quantities of the Products. Any credit terms shall be as stated in Schedule B but Calltrol reserves the right at any time in its sole discretion to require payment in advance of shipment. The terms and conditions of this Agreement shall apply to all Orders and control over any different or additional terms on any Reseller Order form. All Orders shall be subject to acceptance by Calltrol. Calltrol shall use its best efforts to ship promptly but shall not be liable for any damages to Reseller or to any third party caused by delay or error in filling, or failure to fill, any Orders for any reason. Reseller acknowledges that Products and the related dongle will not be enabled by Calltrol to be full functioning without date limitation until Calltrol has received full payment for the particular Products. Reseller also acknowledges that Calltrol will require approximately three (3) business days after payment to do such enabling.

**2.3 Taxes** In addition to the Price and other fees payable hereunder, Reseller shall pay any federal, state, local or other duties and excise taxes, now or hereafter applied on the sale, transportation, import, export, licensing or use of the Products including sales tax, value added tax or similar tax and any interest and penalties. Any taxes imposed by federal, state, or any local government or any amount in lieu thereof, including interest and penalties thereon, paid or payable at any time by CTV and/or Calltrol in connection with transactions under this Agreement, but not including any taxes based on CTV and/or Calltrol net income, shall be borne by Reseller.

**3.0 Maintenance and Support, Calltrol Consulting Services**

**3.1 End-User Support** Reseller, and not Calltrol or CTV, is responsible for providing its End-Users all application development, consulting, training and direct End-User support and maintenance. During the term of this Agreement providing Reseller is not in default of its payment or other obligations under this Agreement, Calltrol will provide new versions and fixes to reseller on an "as available" basis and without charge unless separately priced as a separate Product. Reseller agrees that such support will be provided by Reseller only to End-Users under Reseller warranty or maintenance service and for which all applicable fees have been paid to Calltrol. Calltrol reserves the right to designate any modified or updated versions of the Product as new Products, which are not required to be provided under Calltrol support. Such new Products will only be provided to Reseller for distribution to End-Users under maintenance subject to the payment of additional license and support fees as designated by Calltrol. Calltrol will use reasonable efforts to respond to Reseller's inquiries regarding support in a timely manner. However, Calltrol does not guarantee the timeliness of its responses or that it will be able to answer all of Reseller's inquiries. Reseller shall reimburse Calltrol for any out-of-pocket expenses incurred, including, without limitation, telephone, shipping, insurance and travel-related expenses. But no travel will be undertaken except upon request of Reseller. Reseller support prices and services are in Schedule E.

**3.2 Calltrol Consulting Services** Any consulting services in connection with training, application development, customization or other services requested of Calltrol and furnished by Calltrol shall be furnished at Calltrol's then standard rates for such services unless furnished under a written Calltrol quote specifying different terms.

**4.0 Confidentiality and Proprietary Rights**

**4.1 Confidentiality** Reseller and Calltrol acknowledge that, in the course of dealings, each may acquire information about the other party, its business activities and operations, its technical information and trade secrets, including but not limited to the SDK, which the party considers confidential and proprietary (the "Confidential Information"). Confidential Information shall not include information generally available to or known by the public, or information independently developed outside the scope of this Agreement. Each party shall hold all such Confidential Information in strict confidence and shall not reveal the same except pursuant to a court order or upon request of the other party. The Confidential Information shall be safeguarded with at least as great a degree of care as each party uses to safeguard its own most confidential materials or data relating to its own business, but in no event less than a reasonable degree of care.

**4.2 SDK Proprietary Rights** Reseller acknowledges and agrees that the SDK and its related documentation are valuable trade secrets of CTV and/or Calltrol and title thereto remains in CTV and/or Calltrol and are not to be disclosed directly or indirectly, by Reseller to any person, company or institution whatsoever other than as expressly set forth in this Agreement. Reseller consents to injunctive relief for any breach or threatened breach of this provision, Reseller hereby agreeing that other remedies are inadequate.

**4.3 Unauthorized Copying** Reseller agrees that it will not copy, modify or reproduce the Programs in any way except as expressly permitted herein or as permitted under the applicable license agreement. Reseller agrees to notify Calltrol promptly upon becoming aware of any circumstances of any unauthorized use or copying of the programs by any person or entity not authorized to do so. Reseller agrees to cooperate with Calltrol and/or CTV in any action necessary to prevent or stop the unauthorized use.

**5.0 Warranties and Limitation of Liability**

**5.1 Limited Warranty to Reseller** For a period of ninety (90) days from delivery to Reseller, Calltrol warrants that the Products conform to their specifications in all material respects. Any breach of this warranty must be reported in writing within the warranty period in sufficient detail to enable the error to be replicated and a remedy or workaround certified. If Calltrol is unable to provide a fix or workaround within a reasonable time, Calltrol will refund the money paid Calltrol for the particular Product. This is the sole operating warranty and remedy with respect to Products.

**5.2 Warranties to End-Users** Except to the extent that warranties are made direct to the End-User in the applicable CTV End-User License Agreement, Reseller agrees that all warranties to End-Users shall be solely on behalf of Reseller and not on behalf of Calltrol or CTV. Reseller agrees to defend and save Calltrol and CTV harmless from any Reseller failure to comply with this provision.

**5.3 Disclaimer of Warranties** EXCEPT FOR THE LIMITED WARRANTY SET FORTH IN SECTIONS 5.1 AND 5.2, THE PRODUCTS ARE PROVIDED "AS IS". CTV AND/OR CALLTROL SPECIFICALLY DISCLAIM ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS AND DOCUMENTATION, OPERATION OF THE PRODUCTS, AND ANY PARTICULAR APPLICATION OR USE OF THE PRODUCTS.

**5.4 Limitation of Liability** IN NO EVENT SHALL CTV AND/OR CALLTROL BE LIABLE FOR ANY LOSS OF PROFIT OR ANY OTHER COMMERCIAL DAMAGE, INCLUDING BUT NOT LIMITED TO SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES UNDER ANY CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, CLAIMS ARISING FROM MALFUNCTION OR DEFECTS IN THE PRODUCTS. CTV'S AND/OR CALLTROL'S MAXIMUM LIABILITY HEREUNDER IS EXPRESSLY LIMITED TO THE AMOUNT PAID UNDER THIS AGREEMENT BY RESELLER TO CTV AND/OR CALLTROL WITHIN THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE CAUSE GIVING RISE TO THE CLAIM.

**6.0 Reseller Obligations**

**6.1 Marketing Efforts** Reseller agrees to use its best efforts to promote the sale of the Products. Reseller agrees to provide Calltrol with copies of Resellers promotion and advertising material for the Products prior to use. Reseller shall not use and shall withdraw and retract any promotion or advertising that Calltrol finds inaccurate or in breach of the terms of this Agreement.

**6.2 Prohibited Practices** Reseller may not sell Products except with concurrent sale of Reseller products or services of significant value. Reseller may not make any contracts or commitments on behalf of CTV and/or Calltrol.

*
**6.3 Development of Competing Products** During the term of this Agreement and so long as Reseller has custody or access to any of the Products, Reseller agrees that it will not directly or knowingly indirectly participate in the development or commercialization of software products competitive to the Products but this provision shall not be construed to prevent Reseller from distributing any products, including products competitive with the Products. Reseller represents that it is not currently marketing or developing for marketing software performing functions substantially similar to those performed by any CTV or Calltrol Products, that it has no current intention to develop such software, and that it is not currently consulting to any entity with respect to the development of such software to be marketed to others.

* Please see excision on Attachment 1 BB 9T

**6.4 Reporting** Reseller shall provide end-user names, addresses, phone numbers, and contact information to Calltrol as part of an Order. Calltrol shall use this information solely for verification of end-user status.

**6.5 Non-Hire** The parties agree that neither will solicit for hire, or hire, an employee of the other during the term of this Agreement and for twelve (12) months thereafter. For purposes of this section, an employee is an individual employed by a party in a technical or managerial capacity at any time in the immediately prior six (6) month period without written consent.

Initials BB 9T

\\Nt3\Operations\Contract Originals\Reseller Agreement.doc 9/26/2001

Feb.26. 2002 11:38AM BUFFALO INT 914 747 8595 No.0899 P. 4/7

4.3 **Unauthorized Copying** Reseller agrees that it will not copy, modify or reproduce the Programs in any way except as expressly permitted herein or as permitted under the applicable license agreement. Reseller agrees to notify Calltrol promptly upon becoming aware of any circumstances of any unauthorized use or copying of the programs by any person or entity not authorized to do so. Reseller agrees to cooperate with Calltrol and/or CTV in any action necessary to prevent or stop the unauthorized use.

**5.0 Warranties and Limitation of Liability**

5.1 **Limited Warranty to Reseller** For a period of ninety (90) days from delivery to Reseller, Calltrol warrants that the Products conform to their specifications in all material respects. Any breach of this warranty must be reported in writing within the warranty period in sufficient detail to enable the error to be replicated and a remedy or workaround certified. If Calltrol is unable to provide a fix or workaround within a reasonable time, Calltrol will refund the money paid Calltrol for the particular Product. This is the sole operating warranty and remedy with respect to Products.

5.2 **Warranties to End-Users** Except to the extent that warranties are made direct to the End-User in the applicable CTV End-User License Agreement, Reseller agrees that all warranties to End-Users shall be solely on behalf of Reseller and not on behalf of Calltrol or CTV. Reseller agrees to defend and save Calltrol and CTV harmless from any Reseller failure to comply with this provision.

5.3 **Disclaimer of Warranties** EXCEPT FOR THE LIMITED WARRANTY SET FORTH IN SECTIONS 5.1 AND 5.2, THE PRODUCTS ARE PROVIDED "AS IS". CTV AND/OR CALLTROL SPECIFICALLY DISCLAIM ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS AND DOCUMENTATION, OPERATION OF THE PRODUCTS, AND ANY PARTICULAR APPLICATION OR USE OF THE PRODUCTS.

5.4 **Limitation of Liability** IN NO EVENT SHALL CTV AND/OR CALLTROL BE LIABLE FOR ANY LOSS OF PROFIT OR ANY OTHER COMMERCIAL DAMAGE, INCLUDING BUT NOT LIMITED TO SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES UNDER ANY CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, CLAIMS ARISING FROM MALFUNCTION OR DEFECTS IN THE PRODUCTS. CTV'S AND/OR CALLTROL'S MAXIMUM LIABILITY HEREUNDER IS EXPRESSLY LIMITED TO THE AMOUNT PAID UNDER THIS AGREEMENT BY RESELLER TO CTV AND/OR CALLTROL WITHIN THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE CAUSE GIVING RISE TO THE CLAIM.

**6.0 Reseller Obligations**

6.1 **Marketing Efforts** Reseller agrees to use its best efforts to promote the sale of the Products. Reseller agrees to provide Calltrol with copies of Resellers promotion and advertising material for the Products prior to use. Reseller shall not use and shall withdraw and retract any promotion or advertising that Calltrol finds inaccurate or in breach of the terms of this Agreement.

6.2 **Prohibited Practices** Reseller may not sell Products except with concurrent sale of Reseller products or services of significant value. Reseller may not make any contracts or commitments on behalf of CTV and/or Calltrol.

6.3* **Development of Competing Products** During the term of this Agreement and so long as Reseller has custody or access to any of the Products, Reseller agrees that it will not directly or knowingly indirectly participate in the development or commercialization of software products competitive to the Products but this provision shall not be construed to prevent Reseller from distributing any products, including products competitive with the Products. Reseller represents that it is not currently marketing or developing for marketing software performing functions substantially similar to those performed by any CTV or Calltrol Products, that it has no current intention to develop such software, and that it is not currently consulting to any entity with respect to the development of such software to be marketed to others.

* Please see exclusion on Attachment 1 (PP) PT SB

6.4 **Reporting** Reseller shall provide end-user names, addresses, phone numbers, and contact information to Calltrol as part of an Order. Calltrol shall use this information solely for verification of end-user status.

6.5 **Non-Hire** The parties agree that neither will solicit for hire, or hire, an employee of the other during the term of this Agreement and for twelve (12) months thereafter. For purposes of this section, an employee is an individual employed by a party in a technical or managerial capacity at any time in the immediately prior six (6) month period without written consent.

**7.0 Term and Termination**

**7.1 Term** This Agreement shall have an initial term of two (2) years from the date last signed below (the "Initial Term"), and shall thereafter automatically renew for successive one (1) year periods (each a "Renewal Term"), unless earlier terminated in accordance with the terms of this Agreement. Either party may terminate this Agreement effective on the last day of the Initial Term, or at the end of any Renewal Term, by serving written notice of such termination on the other party at least ninety (90) days prior to the effective date thereof.

**7.2 Termination** This Agreement may be terminated immediately by Calltrol upon written notice under any of the following conditions:

(a) if Reseller shall be declared insolvent or bankrupt;

(b) if a petition is filed in any court to declare Reseller bankrupt or for a reorganization under the Bankruptcy Law or any similar statute and such petition is not dismissed in sixty (60) days or if a Trustee in Bankruptcy or a Receiver or similar entity is appointed for Reseller;

(c) if Reseller does not pay Calltrol within 10 days of written notice that a payment is overdue;

(d) if Reseller breaches the provisions of Sections 4.l, 4.2 or 5.2 of this Agreement; or

(e) if Reseller otherwise materially breaches the terms of this Agreement, and such breach is not cured within thirty (30) days after written notice of such breach.

**7.3 Duties Upon Termination** Provided termination is not a result of a material breach of Sections 4.1, 4.2, or 5.2, the parties agree to continue their cooperation in order to effect an orderly termination of their relationship. For up to one (1) year after termination, Reseller may continue to fulfill maintenance commitments made in good faith and in accordance with this Agreement prior to notice of termination. Upon termination, Reseller shall have no right to order or receive any additional copies of the Products and all of Reseller's rights and licenses granted hereunder shall immediately cease except to the limited extent necessary to fulfill such maintenance commitments. Within thirty (30) days of termination, Reseller shall return all copies of any promotional materials, marketing literature, written information and reports pertaining to the Products that have been supplied by C.T. Ventures and/or Calltrol except to the limited extent necessary to fulfill maintenance commitments under this Section 7.3.

**7.4 Indemnification for Infringement** Calltrol agrees to defend and indemnify Reseller from any money judgment, costs and attorney fees awarded to the extent due to a claim of infringement of a U.S. patent, copyright, or other intellectual property right by the unmodified Products as furnished by Calltrol. If a Product has been found to infringe or if in Calltrol's judgment such a finding is likely, Calltrol will (i) replace the Product with a non-infringing product of equivalent functionality; or (ii) modify the Product to become non-infringing but of equivalent functionality; or (iii) if neither of the first two alternatives is reasonably available, refund the license fees paid Calltrol for the infringing Product on a five year use amortization basis from the date of delivery to Reseller. This is the sole remedy for infringement. The indemnities of this Section are subject to Reseller granting Calltrol prompt notice of any such claim and granting Calltrol (and/or CTV, as directed by Calltrol) full control of the defense or settlement thereof. These indemnities do not apply to any infringement that would not be such except for Reseller or third party supplied elements.

**8.0 Miscellaneous**

**8.1 Force Majeure** Neither party shall be liable or deemed to be in default for any delay or failure in performance under this Agreement or interruption of service resulting directly or indirectly from acts of God, or any causes beyond the reasonable control of the party.

**8.2 Applicable Law, Jurisdiction, and Venue** This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflicts of laws. The parties agree that the application of the United Nation Convention on the International Sale of Goods is specifically excluded. Jurisdiction for litigation of any dispute, controversy or claim arising out of or in connection with this Agreement, or the breach thereof shall be only in the Federal or the State Court with competent jurisdiction located in Westchester County, State of New York.

**8.3 Right to Examine Records** During the term of this Agreement and for three years thereafter, Reseller shall maintain accurate books and records of all licenses granted for the Products, End-Users receiving maintenance and fees paid and

payable to Calltrol under this Agreement. Upon reasonable notice to Reseller, and no more frequently than twice a year, Reseller shall make such books and records available to CTV and/or Calltrol for inspection and copying.

**8.4 Export Controls and Certification** Reseller agrees to comply with the Export Control Regulations of the United States and is responsible for compliance with any certification requirements of any country, except the United States, in which Reseller uses or sells the Products.

**8.5 Enforcement by CTV** Reseller agrees that provisions of this agreement affecting proprietary rights and limitations of use affecting the Products may be enforced by either or both Calltrol and CTV.

**8.6 Entire Agreement** This Agreement, including the Schedules attached hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all previous proposals, both oral and written, negotiations, representations, commitments, writings and all other communications between the parties. This Agreement may not be modified except by a writing signed by a duly authorized representative of each of the parties.

**8.7 Independent Contractors** It is expressly agreed that Calltrol and Reseller are acting hereunder as independent contractors and under no circumstances shall any of the employees of one party be deemed the employees of the other for any purpose. This Agreement shall not be construed as authority for either party to act for the other party in any agency or other capacity, or to make commitments of any kind for the account of or on behalf of the other except to the extent and for the purposes provided for herein.

**8.8 Assignment** This Agreement is not assignable by Reseller except with the advance written consent of Calltrol.

**8.9 Severability and Waiver** If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement. No waiver by any party of any breach of any provisions hereof shall constitute a waiver of future or continuing breaches unless made in writing signed by the party.

The following attachments are part of this Agreement:

Attachment 1: Exclusion to Section 6.3 [initials]
Schedule A: Products and Territory
Schedule B: Prices and Payment
Schedule C: End-User License
Schedule D: SDK License
Schedule E: Reseller Support
Schedule F: Technical Contact

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by a duly authorized representative as of the date set forth above.

| Company: Loxysoft AB | Calltrol Corporation |
|---|---|
| Name: Björn Bylander | Name: David Friedman |
| Signature: [signature] | Signature: [signature] |
| Title: CEO | Title: VP. |
| Date: 2002-02-26 | Date: 3/29/02 |

payable to Calltrol under this Agreement. Upon reasonable notice to Reseller, and no more frequently than twice a year, Reseller shall make such books and records available to CTV and/or Calltrol for inspection and copying.

**8.4 Export Controls and Certification** Reseller agrees to comply with the Export Control Regulations of the United States and is responsible for compliance with any certification requirements of any country, except the United States, in which Reseller uses or sells the Products.

**8.5 Enforcement by CTV** Reseller agrees that provisions of this agreement affecting proprietary rights and limitations of use affecting the Products may be enforced by either or both Calltrol and CTV.

**8.6 Entire Agreement** This Agreement, including the Schedules attached hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all previous proposals, both oral and written, negotiations, representations, commitments, writings and all other communications between the parties. This Agreement may not be modified except by a writing signed by a duly authorized representative of each of the parties.

**8.7 Independent Contractors** It is expressly agreed that Calltrol and Reseller are acting hereunder as independent contractors and under no circumstances shall any of the employees of one party be deemed the employees of the other for any purpose. This Agreement shall not be construed as authority for either party to act for the other party in any agency or other capacity, or to make commitments of any kind for the account of or on behalf of the other except to the extent and for the purposes provided for herein.

**8.8 Assignment** This Agreement is not assignable by Reseller except with the advance written consent of Calltrol.

**8.9 Severability and Waiver** If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement. No waiver by any party of any breach of any provisions hereof shall constitute a waiver of future or continuing breaches unless made in writing signed by the party.

The following attachments are part of this Agreement:
- Attachment 1: Exclusion to Section 6.3 BB
- Schedule A: Products and Territory
- Schedule B: Prices and Payment
- Schedule C: End-User License
- Schedule D: SDK License
- Schedule E: Reseller Support
- Schedule F: Technical Contact

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by a duly authorized representative as of the date set forth above.

| | | | |
|---|---|---|---|
| Company: | Lorysoft AB | Calltrol Corporation | |
| Name: | Björn Bylander | Name: | David Friedman |
| Signature: | Björn Bylander | Signature: | [signature] |
| Title: | CEO | Title: | VP. |
| Date: | 2002-02-26 | Date: | 3/29/02 |

Attachment 1: Exclusion to section 6.3:

Calltrol acknowledges that Reseller has already developed and marketed and intends to continue to develop and market an IVR system supporting XML scripting and that controls inbound call queues through traditional PBX integration where no switching is done within the IVR system (Existing Product). The parties agree that Reseller's Existing Product and it's ongoing development including the addition of support for TAPI & TSAPI is specifically excluded from the competitive restrictions of paragraph 6.3. If Reseller begins to develop the Existing Product or a new product into a switching platform or predictive dialer or implements a published API substantially similar to or modeled after the Calltrol products it will be deemed a violation of the ~~confidentiality~~ competitive restrictions of paragraph 6.3. The word "published" is used to describe a written specification that is shared with others outside of the parties for the purpose of application integration and is not necessarily public information.

Initials JB

## Schedule A: Products and Territory

**Calltrol / CTV Products**

✓ OAPDE (Open Architecture Predictive Dialing Engine) - Schedule C license

✓ OTS (Object Telephony Server) - Schedule C license

✓ Various other programs and documentation for Computer Telephone Integration - Schedule C license

___ PS240 Developer's Kit for OAPDE/OTS - Schedule D license

✓ Reseller Support - Schedule E

___ Third Party Products

**Territory**

✓ Worldwide

Initials BB [signature]

Feb. 19. 2002 4:43PM BUFFALO INT 914 747 8595 No. 0849 P. 7/24

## Schedule B: Prices and Payment

**Prices**

| | LIST | Value Added Reseller / Solution Provider |
|---|---|---|
| OAPDE – Price per outgoing line not to exceed: | $506.00 | $425.00 |
| OTS NT – Price per Dialogic port not to exceed: | $397.00 | $338.00 |

Please review our separate price list for Value Added Reseller / Solution Provider discounts and certified hardware components and pricing. The price list also includes a schedule with other fees and charges that may apply.

**Prices are subject to change with 30 days advance notice.**

**Payment**

Full payment of the Price for all Orders of the Product and associated shipping costs are due and payable by Reseller to Calltrol Corporation C.O.D. Certified Check or via wire unless otherwise specified in writing. Unless otherwise provided by the Invoice Terms, all other fees and expenses payable hereunder for which CTV and/or Calltrol issues an invoice to Reseller shall be due and payable thirty (30) days from the date of the invoice. Unless otherwise provided by the Invoice Terms, a late payment charge of the lessor of one and one-half percent (1.5%) per month or the highest interest rate allowed by applicable law shall be charged upon all unpaid amounts due hereunder for more than thirty (30) days. Reseller shall reimburse CTV and/or Calltrol for any out-of-pocket expenses incurred at Reseller's request, including, without limitation, telephone, shipping, insurance and travel-related expenses.

## Schedule C: End-User License

Initials BB

Page 8 of 11

Originals\Reseller Agreement.doc 9/26/2001

Feb. 19. 2002 4:43PM BUFFALO INT 914 747 8595 No. 0849 P. 9/24

## Schedule D: SDK License

Initials BB PA

Page 9 of 11

Originals\Reseller Agreement.doc 9/26/2001

Feb. 19. 2002 4:44PM BUFFALO INT 914 747 8595 No. 0849 P. 12/24

C. T. Ventures, Inc.

## Software Developer's Kit License Agreement

Licensee: Loxy Soft Agreement No. On File

Site Location:

Licensee agrees to accept and C. T. Ventures ("CTV") agrees to grant to Licensee a non-transferable single copy license to CTV's Software Developer's Kit software under the following terms and conditions.

**1. Proprietary rights and use restrictions**

(1) **Proprietary rights of CTV in the software** Licensee recognizes that the computer programs, system documentation manuals and other materials in the CTV Software Developer's Kit (the "SDK" or "Licensed Programs") are subject to the proprietary rights of CTV or of CTV's licensors. Licensee agrees with CTV that the SDK programs, documentation and all information or data supplied by CTV in machine-readable form are trade secrets of CTV or of its licensors, are protected by civil and criminal law, and by the law of copyright, are very valuable and that their use and disclosure must be carefully and continuously controlled. Licensee further understands that operator manuals, training aids and other written materials are subject to the Copyright Act of the United States. CTV and its licensors retain title to the programs, documentation, and information or data in the programs. Licensee shall keep each and every item to which CTV or its licensors retains title free and clear of all claims, liens and encumbrances except those of CTV, and any act of Licensee, voluntary or involuntary, purporting to create a claim, lien or encumbrance on such an item shall be void.

(2) **Restrictions on Licensee's use and disclosure** The Licensed Programs are for the sole use of Licensee and are to be used solely to interface, configure and support client applications for CTV licensed OTS software. The Licensed Programs may be disclosed solely to Licensee employees and to Licensee consultants on a need-to-know basis and, in the case of consultants, written agreement by the consultant to comply with the terms of this Agreement.

(3) **Competitive uses** Licensee agrees that while this License is in effect or while it has custody or possession of any portion of the SDK and/or CTV Licensed OTS software, it will not directly or indirectly lease, license, sell, offer or negotiate to develop, lease, license or sell, or otherwise negotiate or contract for any software similar to the SDK and/or the CTV OTS software, but this clause shall not be construed to prohibit Licensee from acquiring for its own use any software from third parties including competitive software.

(4) **Copies** Licensee agrees that while this License is in effect, or while it has custody or possession of any property of CTV or its licensors, it will not (1) copy or duplicate, or permit anyone else to copy or duplicate, any physical or magnetic version of the computer programs, documentation or information furnished by CTV in machine-readable form, (2) create or attempt to create, or permit others to create or attempt to create, by reverse engineering or otherwise, the source programs or any part thereof from the object program or from other information made available under this License or otherwise. Licensee may make backup copies but such copies shall be kept solely at the authorized site.

(5) **Use restrictions** The computer programs licensed hereunder shall be used only on a single personal computer. All programs, documentation, and materials in machine-readable form supplied under this license shall be kept in a secure place, under access and use restrictions not less strict than those applied to Licensee's most valuable and sensitive programs.

(6) **Unauthorized acts** Licensee agrees to notify CTV immediately of the unauthorized possession, use, or knowledge of any item supplied under this license and of other information made available to the Licensee under this Agreement, by any person or organization not authorized by this Agreement to have such possession, use or knowledge. Licensee will promptly furnish full details of such possession, use or knowledge

to CTV, will assist in preventing the recurrence of such possession, use or knowledge, and will cooperate with CTV and/or CTV resellers in any litigation against third parties deemed necessary by CTV to protect its proprietary rights. Licensee's compliance with this subparagraph shall not be construed in any way as a waiver of CTV's right to recover damages or obtain other relief against Licensee for its negligent or intentional harm to their respective proprietary rights, or for breach of contractual rights.

(7) **Inspection** To assist in the protection of proprietary rights, Licensee shall permit representatives of CTV to inspect at all reasonable times any location at which items supplied are being used or kept.

(8) **Transfer of license rights** The Licensee's rights to use the programs, documentation, manuals and other materials supplied by CTV hereunder shall not be assigned, licensed, or transferred to a successor, affiliate or any other person, firm, corporation or organization, voluntarily, by operation of law, or an any other manner without the prior written consent of CTV.

(9) **Remedies** If Licensee attempts to use, copy, license, or convey the items supplied by CTV hereunder, in a manner contrary to the terms of this Agreement or in competition with CTV or in derogation of CTV proprietary rights, whether these rights are explicitly herein stated, determined by law, or otherwise, CTV shall have, in addition to any other remedies available to them, the right to injunctive relief enjoining such action, the Licensee hereby acknowledging that other remedies are inadequate.

2. **LIMITED WARRANTY** THE LICENSED PROGRAMS ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE LICENSED PROGRAM IS WITH LICENSEE.

Licensor does not warrant that the functions contained in the Licensed Programs will meet Licensee's requirements or that the operation of the Licensed Programs will be uninterrupted or error free.

However, Licensor warrants the diskette(s) on which the Licensed Programs are furnished to be free from defects under normal use for a period of ninety (90) days from the date of delivery to Licensee as evidenced by a copy of Licensee's paid invoice.

3. **Limitations of remedies** Licensor's entire liability and Licensee's exclusive remedy shall be the replacement of any diskette not meeting Licensor's "Limited Warranty" and which is returned to Licensor or Licensor's authorized reseller with a copy of Licensee's paid invoice. If licensor or the dealer is unable to deliver a replacement diskette which is free of defects Licensee may terminate this Agreement by returning the Licensed Programs, and the license fee will be refunded.

In no event will Licensor be liable for any damages, including any lost profits, or other incidental or consequential damages arising out of the use or performance of such Licensed Programs even if Licensor or an authorized Licensor dealer has been advised of the possibility of such damages.

Licensee agrees that Licenser's liability arising out of contract, negligence, strict liability in tort or warranty shall not exceed any amounts paid by Licensee for the particular Licensed Programs identified above.

4. **Term** This Agreement is effective from the date hereof and shall remain in force until terminated. This Agreement may be discontinued by the Licensee at any time upon written notice. Licensor may terminate this Agreement if the Licensee fails to comply with any of the terms and conditions of this Agreement. Licensor shall have the right to terminate this agreement and license(s) granted herein:

(1) Upon ten days' written notice in the event that Licensee, its officers or employees violates any provision of this License Agreement including, but not limited to, confidentiality and payment;

(2) In the event Licensee (i) terminates or suspends its business; (ii) becomes subject to any bankruptcy or insolvency proceeding under federal or state statute or (iii) becomes insolvent or becomes subject to direct control by a trustee, receiver or similar authority.

In the event of termination by reason of the Licensee's failure to comply with any part of this agreement, or upon any act which shall give rise to Licenser's right to terminate, Licensor shall have the right, at any time, to terminate the license(s) and take immediate possession of the Licensed Programs and documentation and all copies wherever located, without demand or notice. Within five (5) days after termination of the license(s), Licensee will return to Licensor the Licensed Programs in the form provided by Licensor or as modified by the Licensee, or upon request by Licensor destroy the License Programs and all copies, and certify in writing that they have been destroyed. Termination under this paragraph shall not relieve Licensee of its obligations regarding confidentiality of the Licensed Programs.

Without limiting any of the above provisions, in the event of termination as a result of the Licensee's failure to comply with any of its obligations under this License Agreement, the Licensee shall continue to be obligated for any payments due. Termination of the license(s) shall be in addition to and not in lieu of any equitable remedies available to Licensor or Licensor's authorized reseller.

**5. General**

(1) The parties acknowledge that they have read this Agreement, understand it, and agree to be bound by its terms and further agrees that it is the complete and exclusive statement of the Agreement, which supersedes and merges all prior proposals, understandings and all other agreements, oral and written, between the parties relating to this Agreement. This Agreement may not be modified or altered except by a written instrument duly executed by both parties.

(2) This Agreement and performance hereunder shall be governed by and construed in accordance with the laws of the State of New York.

(3) The waiver or failure of either party to exercise in any respect any right provided for herein shall not be deemed a waiver of any further right hereunder.

(4) No action, regardless of form, arising out of this Agreement may be brought by Licensee more than one (1) year after the cause of action has arisen.

(5) Either party shall have the right to collect from the other party its reasonable expenses incurred in enforcing this agreement or collecting any amounts due from that party, including attorney's fees.

(6) If any of the provisions, or portions thereof, of this Agreement are invalid under any applicable statute or rule of law, they are to that extent to be deemed omitted.

(7) This Agreement becomes effective when signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by a duly authorized representative as of the date set forth below.

| C. T. Ventures, Inc. | Licensee |
|---|---|
| By ______________________ | By ______________________ |
| David Friedman | Print ______________________ |
| Vice President | Title ______________________ |
| Date ______________________ | Date ______________________ |

Initials BD

Feb-19-2002 4:45PM BUFFALO INT 914 747 8595 No.0849 P.15/24

CCaassee77118S-ccv-0099002266-NNSSRR-PPEEDD DDooccuummeenntt 6667-1 FFiilleedd 1100//0056//2222 PPaaggee 2267 ooff 4401

## Schedule A

## Order Supplement

Initials BB [signature]

Page 4 of 5

Developers Kit License

7/20/2000

Feb. 19. 2002 4:45PM BUFFALO INT 914 747 8595 No. 0849 P. 16/24

### Schedule B

## Technical Contact Information

## Schedule E: Reseller Support

## *Maintenance:*

There is NO CHARGE to the reseller for technical assistance and support during standard business hours (9:00am – 5:00pm Eastern time) for efforts to develop, deliver and install systems based on the Calltrol Corporation platform. Standard Support means giving you, the reseller, reasonable access to a certified Calltrol Corporation technical representative. This access will be provided to your qualified personnel and is not intended to be used for training purposes.

A software maintenance plan covering the cost of providing software updates and continued maintenance is available. The plan is specific to each end-user and each end-user system. The cost of maintenance is 10% of Calltrol license fees. Refer to our Maintenance Plan for more information.

We provide software maintenance only for those end-users you register with us. Maintenance will provide end-users with the most current version of our product. ONLY THE MOST CURRENT VERSION OF OUR PRODUCTS ARE ELIGIBLE TO RECEIVE SUPPORT.

You must provide us with a completed registration form listing each individual end-user that requests to be added to the maintenance plan and remit annually the commensurate maintenance fees. In a situation where support is provided for the benefit of an unregistered, unpaid end-user per your discretion or request, the reseller may be responsible for the maintenance fee for that end user for one full year, plus a $300.00 processing fee. (Maintenance is retroactive to 7/1/00 or the original invoice date – whichever is later.)

☐ I wish to enroll in the Maintenance Program

☒ I decline the Maintenance Program

## *24 Hour Phone Support:*

This service has been designed to provide you and your customers with around-the-clock support by providing you, the reseller, 24-hour access to a certified Calltrol Corporation technical representative. Emergency trouble shooting services are provided 24-hours per day, 7-days per week (installation and development concerns are only available during standard business hours). This access will be provided to your qualified personnel and is not intended to be used for training purposes.

We will provide 24 Hour Phone Support to the reseller for reseller benefit for an annual fee of $250.00 for up to 24 ports (ports = agents + lines) and $7.50 for each additional port, per system.

We will provide 24 Hour Phone Support to the reseller for an end-user's benefit for an annual fee of $400.00 for up to 24 ports (ports = agents + lines) and $10.00 for each additional port per system.

We will provide 24 Hour Phone Support at no additional charge for the benefit of the reseller and all registered, fully paid users if over 50% of the end-user account base is registered with us and associated Standard Support fees are paid. In order to take advantage of this benefit, a list of all your end users must be submitted to us in advance. This list will be matched against our information base to assure the 50% threshold is agreed upon.

Support will only be provided upon key serial number verification. In a situation where support is provided for the benefit of an unregistered user per your direction or request, the reseller may be responsible for the maintenance fee for that end user for one full year, plus a $300.00 processing fee.

☐ I wish to enroll in the 24 Hour Phone Support Program for Reseller

☒ I decline the 24 Hour Phone Support Program for Resellers

Authorized Signature : Björn Bylander
Print Name : Björn Bylander
Date : 2002-02-20

Initials BB [initials]

Feb. 19. 2002 4:46PM BUFFALO INT 914 747 8695 No. 0849 P. 20/24

## Schedule F: Technical Contact Information

Page 11 of 11

Initials BSH [signature]
\\H2\Operations\Contract Originals\Reseller Agreement.doc 9/26/2001

Feb. 19. 2002 4:46PM BUFFALO INT 914 747 8595 No. 0849 P. 21/24

# Calltrol Corporation

## Technical Contact Information

Customer LoxySoft AB Agreement No. 1539

☒ Reseller ☐ End User ☒ Developer

**Only the contacts listed below are authorized to contact Calltrol for technical assistance.**

**Use, duplication and distribution of the development materials are restricted by the software license and international copyright laws.**

**Specify 7 Character User ID / 6 Character Password for web access** ON FILE / ____

| | **Primary Technical Contact** | **Secondary Technical Contact** |
|---|---|---|
| **Name** | Björn Bylander | Martin Lund |
| **Address** | Öneslingan 11 | Öneslingan 11 |
| | 832 51 Frösön | 83251 Frösön |
| **Phone** | +46-63-183440 | +46-63-183440 |
| **FAX** | +46-63-124035 | +46-63-124035 |
| **Email Address** | bjorn@loxysoft.se | martin@loxysoft.se |

**Licensed Customer Information**

| | |
|---|---|
| **Customer Name** | Loxysoft AB |
| **Address** | Öneslingan 11 |
| | 83251 Frösön, Sweden |
| **Phone** | +46 (0)63 183440 |
| **FAX** | +46 (0)63 124035 |
| **Email Address** | info@loxysoft.se |
| **Authorized Signature** | Björn Bylander |
| **Print** | Björn Bylander |
| **Date** | 2002-02-26 |

Initials BB

**Calltrol Corporation**
**Order Supplement**

Agreement # 1539

Customer: Loxysoft

Order Supplement No. 1540

**Software**

| Item Description / Model | | |
|---|---|---|
| 92 | Ports OTS 6.0 Outbound Live. Features include Predictive Dialing, Call Progess Analysis, Connect to Live Agent, Conference, Monitor, Coach. @ $ 198.00 each | $ 18,216.00 |
| | | |
| 92 | Non Calltrol Hardware Support @ $35.00 | $ 3,220.00 |
| 1 | First Year Maintenance | N/C |
| 1 | Key Dongle Security Key | N/C |
| 1 | SDK Credit (Less bank fee) | <$479.00> |

Total Software & Hardware : $ 20,957.00

**Services**

| Description | | |
|---|---|---|
| 1 | Ship key Dongle to Loxysoft | $ 40.00 |

Total Services : $ 40.00

**Total Software, Hardware and Services :** $ 20,997.00

**Payment Schedule** (Payments to Buffalo are due as previously noted and in accordance with the following schedule.)

| | Amount * |
|---|---|
| 1. Deposit with Agreement | $ 8,400.00 |
| 2. COD | |
| 3. 30 Days | $ 12,597.00 |
| Total : | 20,997.00 |

*Tax, if any, will be added.

Authorized by: Björn Bylander

Date: 2002-02-20

Print: Björn Bylander

\\nt3\operations\contract originals\Order Supplement.xls Page 1 of 1 9/14/2001

Feb 19 2002 4:46PM BUFFALO INT 914 747 8595 No.0849 P. 23/24

Calltrol

# System Data Form

PHONE: (914) 747-8500 FAX: (914) 747-8595

Customer Loxysoft
Contact Phone +46-63-183440
Date Started 2/19/02

Contact B. Bylander
Fax 46-63-124035
Order # 1540

Sales Person [illegible]
Configuration Outbound Live
Circle one OAPDE (OTS)

(For help, see: s:\Sales\Post Sales Internal Procedures & Forms\ Instructions Telephony Server System Data Form.doc)

**Ship To Information**

Company Loxysoft AB
Address Anestingan 11
83251 Frösön
Sweden

Attention: Björn Bylander
Phone: +46-63-183440 FAX +46-63-124035
Email: bjorn@loxysoft.se

**End User Information**

Company Telab Contact Center AB
Address Stavre 2270
84050 Gällö
Sweden

Other Customer Contact (Check box to CC on status)
Name Tobias Sjölander Phone +46-693-21360 ☐ CC
Email tobias@telab.se FAX +46-693-21350

This Section To Be Completed By Customer

Shipping Method ☐ Fedex ☐ US MAIL ☐ UPS ☐ RPS ☐ Airborne ☐ Other ______
Tracking Code ______ Pick Up# ______ Date/Time ______
Standard Shipping Cost ______ | Shipping Date: Scheduled ______ Actual ______

OAPDE / OTS ______
Version: ______

☐ KeyLock ☐ Conferencing
No. Lines ______ | Exp. Date ______
Connects ______ | Ser. No. ______

☐ DOS Ver/Serv-Pak ______
☐ Win/NT Ver/Serv-Pak ______
☐ 4.1SC ☐ DNA Ver ______

☐ CTS4000 ☐ CTS5200 ☐ CTS7000 ☐ Conf. Cards ☐ Break Out Box ☐ CSU
☐ T1 Station ☐ Analog Station ☐ T1 Trunk ☐ Analog Trunk ☐ SC Cable: 4, 8, 16 ☐ ESP

*Current System has: ___ Boards ___ Cables. Final System Plans to have: ___ Boards ___ Cables

| QTY | MODEL (csu, cables, pc) | SER# (s) |
|---|---|---|
| 92 | OTS Outbound Live | |
| 92 | Non Calltrol hardware Support | |
| 1 | Key Dongle Security key | |

Special Concerns ______

URGENT: This form must be completed and signed by the Customer prior to shipping. If you agree with all the information contained in this form and you have no further questions, Please sign and date.

Authorized Person: (Signature) [signature] (Name) Björn Bylander Date 2002-02-26



# FAX COVER SHEET

**TO:** **Bjorn Bylander**

**FAX:** 46 ~~70-5682853~~ 466 312 4035

**FROM: Dorothy Gay**

**DATE: June ~~7~~ 11, 2002**

**PAGES INCLUDING COVER: # Pages** 4

**RE:** **Subject**

---

Dear Bjorn,

Please initial the changes on the attached pages – 3, 5, and 6. Please fax and mail the pages to me. When I receive the initialed pages, I will send to you an executed copy of the Reseller Agreement.

Thank you for your assistance in this matter.

Regards,

Dorothy Gay
Senior Administrator

Case 7:18-cv-09026-NSR-PED Document 67-1 Filed 10/05/22 Page 34 of 40

# Loxysoft

## FAX COVER SHEET

TO: Dorothy Gay

FAX: 0019147478595

FROM: Björn Bylander

DATE: 2002-06-18

SUBJECT: Changes to Reseller Agreement

---

**4.3 Unauthorized Copying** Reseller agrees that it will not copy, modify or reproduce the Programs in any way except as expressly permitted herein or as permitted under the applicable license agreement. Reseller agrees to notify Calltrol promptly upon becoming aware of any circumstances of any unauthorized use or copying of the programs by any person or entity not authorized to do so. Reseller agrees to cooperate with Calltrol and/or CTV in any action necessary to prevent or stop the unauthorized use.

**5.0 Warranties and Limitation of Liability**

**5.1 Limited Warranty to Reseller** For a period of ninety (90) days from delivery to Reseller, Calltrol warrants that the Products conform to their specifications in all material respects. Any breach of this warranty must be reported in writing within the warranty period in sufficient detail to enable the error to be replicated and a remedy or workaround certified. If Calltrol is unable to provide a fix or workaround within a reasonable time, Calltrol will refund the money paid Calltrol for the particular Product. This is the sole operating warranty and remedy with respect to Products.

**5.2 Warranties to End-Users** Except to the extent that warranties are made direct to the End-User in the applicable CTV End-User License Agreement, Reseller agrees that all warranties to End-Users shall be solely on behalf of Reseller and not on behalf of Calltrol or CTV. Reseller agrees to defend and save Calltrol and CTV harmless from any Reseller failure to comply with this provision.

**5.3 Disclaimer of Warranties** EXCEPT FOR THE LIMITED WARRANTY SET FORTH IN SECTIONS 5.1 AND 5.2, THE PRODUCTS ARE PROVIDED "AS IS". CTV AND/OR CALLTROL SPECIFICALLY DISCLAIM ALL WARRANTIES EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS AND DOCUMENTATION, OPERATION OF THE PRODUCTS, AND ANY PARTICULAR APPLICATION OR USE OF THE PRODUCTS.

**5.4 Limitation of Liability** IN NO EVENT SHALL CTV AND/OR CALLTROL BE LIABLE FOR ANY LOSS OF PROFIT OR ANY OTHER COMMERCIAL DAMAGE, INCLUDING BUT NOT LIMITED TO SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES UNDER ANY CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, CLAIMS ARISING FROM MALFUNCTION OR DEFECTS IN THE PRODUCTS. CTV'S AND/OR CALLTROL'S MAXIMUM LIABILITY HEREUNDER IS EXPRESSLY LIMITED TO THE AMOUNT PAID UNDER THIS AGREEMENT BY RESELLER TO CTV AND/OR CALLTROL WITHIN THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE CAUSE GIVING RISE TO THE CLAIM.

**6.0 Reseller Obligations**

**6.1 Marketing Efforts** Reseller agrees to use its best efforts to promote the sale of the Products. Reseller agrees to provide Calltrol with copies of Resellers promotion and advertising material for the Products prior to use. Reseller shall not use and shall withdraw and retract any promotion or advertising that Calltrol finds inaccurate or in breach of the terms of this Agreement.

**6.2 Prohibited Practices** Reseller may not sell Products except with concurrent sale of Reseller products or services of significant value. Reseller may not make any contracts or commitments on behalf of CTV and/or Calltrol.

*6.3 **Development of Competing Products** During the term of this Agreement and so long as Reseller has custody or access to any of the Products, Reseller agrees that it will not directly or knowingly indirectly participate in the development or commercialization of software products competitive to the Products but this provision shall not be construed to prevent Reseller from distributing any products, including products competitive with the Products. Reseller represents that it is not currently marketing or developing for marketing software performing functions substantially similar to those performed by any CTV or Calltrol Products, that it has no current intention to develop such software, and that it is not currently consulting to any entity with respect to the development of such software to be marketed to others.

* Please see exclusion on Attachment 1 (PP) [initials] SB

**6.4 Reporting** Reseller shall provide end-user names, addresses, phone numbers, and contact information to Calltrol as part of an Order. Calltrol shall use this information solely for verification of end-user status.

**6.5 Non-Hire** The parties agree that neither will solicit for hire, or hire, an employee of the other during the term of this Agreement and for twelve (12) months thereafter. For purposes of this section, an employee is an individual employed by a party in a technical or managerial capacity at any time in the immediately prior six (6) month period without written consent

payable to Calltrol under this Agreement. Upon reasonable notice to Reseller, and no more frequently than twice a year, Reseller shall make such books and records available to CTV and/or Calltrol for inspection and copying.

**8.4 Export Controls and Certification** Reseller agrees to comply with the Export Control Regulations of the United States and is responsible for compliance with any certification requirements of any country, except the United States, in which Reseller uses or sells the Products.

**8.5 Enforcement by CTV** Reseller agrees that provisions of this agreement affecting proprietary rights and limitations of use affecting the Products may be enforced by either or both Calltrol and CTV.

**8.6 Entire Agreement** This Agreement, including the Schedules attached hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all previous proposals, both oral and written, negotiations, representations, commitments, writings and all other communications between the parties. This Agreement may not be modified except by a writing signed by a duly authorized representative of each of the parties.

**8.7 Independent Contractors** It is expressly agreed that Calltrol and Reseller are acting hereunder as independent contractors and under no circumstances shall any of the employees of one party be deemed the employees of the other for any purpose. This Agreement shall not be construed as authority for either party to act for the other party in any agency or other capacity, or to make commitments of any kind for the account of or on behalf of the other except to the extent and for the purposes provided for herein.

**8.8 Assignment** This Agreement is not assignable by Reseller except with the advance written consent of Calltrol.

**8.9 Severability and Waiver** If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement. No waiver by any party of any breach of any provisions hereof shall constitute a waiver of future or continuing breaches unless made in writing signed by the party.

The following attachments are part of this Agreement:
Attachment 1: Exclusion to Section 6.3 [initials] BB
Schedule A: Products and Territory
Schedule B: Prices and Payment
Schedule C: End-User License
Schedule D: SDK License
Schedule E: Reseller Support
Schedule F: Technical Contact

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by a duly authorized representative as of the date set forth above.

| Company: Loxysoft AB | Calltrol Corporation |
|---|---|
| Name: Björn Bylander | Name: David Friedman |
| Signature: [signature] | Signature: [signature] |
| Title: CEO | Title: V.P. |
| Date: 2002-02-26 | Date: 2/26/02 |

Received Time Jun. 18. 4:37AM

**Attachment 1: Exclusion to section 6.3:**

Calltrol acknowledges that Reseller has already developed and marketed and intends to continue to develop and market an IVR system supporting XML scripting and that controls inbound call queues through traditional PBX integration where no switching is done within the IVR system (Existing Product). The parties agree that Reseller's Existing Product and it's ongoing development including the addition of support for TAPI & TSAPI is specifically excluded from the competitive restrictions of paragraph 6.3. If Reseller begins to develop the Existing Product or a new product into a switching platform or predictive dialer or implements a published API substantially similar to or modeled after the Calltrol products it will be deemed a violation of the ~~confidentiality~~ competitive restrictions of paragraph 6.3. The word "published" is used to describe a written specification that is shared with others outside of the parties for the purpose of application integration and is not necessarily public information. BB

BB DT BB

Initials BB DT

Received Time Jun.18. 4:37AM

Attachment 1: Exclusion to section 6.3:

Calltrol acknowledges that Reseller has already developed and marketed and intends to continue to develop and market an IVR system supporting XML scripting and that controls inbound call queues through traditional PBX integration where no switching is done within the IVR system (Existing Product). The parties agree that Reseller's Existing Product and it's ongoing development including the addition of support for TAPI & TSAPI is specifically excluded from the competitive restrictions of paragraph 6.3. If Reseller begins to develop the Existing Product or a new product into a switching platform or predictive dialer or implements a published API substantially similar to or modeled after the Calltrol products it will be deemed a violation of the ~~confidentiality~~ competitive restrictions of paragraph 6.3. The word "published" is used to describe a written specification that is shared with others outside of the parties for the purpose of application integration and is not necessarily public information. BB

Initials BB