UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____        │
│ DATE FILED: __3/15/2023_____        │
└─────────────────────────────────────┘
```

CALLTROL CORPORATION,

                              Plaintiff,

        -against-                                        18 CV 9026 (NSR)
                                                        ORDER & OPINION
LOXYSOFT AB and LOXYSOFT INC.,

                              Defendants.

NELSON S. ROMÁN, United States District Judge:

Plaintiff Calltrol Corporation ("Plaintiff" or "Calltrol") brings this action against Loxysoft AB ("Defendant" or "Loxysoft"), alleging breach of contract with respect to a reseller agreement for software and hardware products. (ECF Nos. 5, 27.)[1] Presently before the Court is Loxysoft's motion for summary judgment. (ECF No. 43.) For the following reasons, the motion is DENIED.

## BACKGROUND

The facts below are taken from the complaint, the parties' Rule 56.1 statements, affidavits, declarations, and exhibits, and the complaint, and are not in dispute except where so noted. All rational inferences are drawn in the non-moving party's favor.

### A. Factual Allegations

Plaintiff is a corporation formed under the laws of the State of New York having its headquarters in New York. (ECF No. 46. ("Def.'s 56.1") ¶ 1.) Loxysoft is a business formed under the laws of Sweden. (Def.'s 56.1 ¶ 2.)

---

[1]        This action was originally brough against Loxysoft AB and its wholly owned subsidiary, Loxysoft Inc (together, the "Defendants"). (See ECF No. 5, the ("Complaint".) Following the Court's issuance of the December 16, 2021 Order and Opinion granting the Defendants' motion to dismiss in part (ECF No. 26), and given that Plaintiff did not subsequently file an amended complaint (*see* ECF No. 27), the only remaining claim in this action is the breach of contract claim against LoxySoft AB. (*See* ECF No. 27.)

Calltrol and Loxysoft entered an agreement (ECF No. 44 ("Wrobel Decl.") Exh. E (hereinafter, the "Reseller Agreement") on or around March 29, 2002 whereby Calltrol granted Loxysoft a non-exclusive non-transferable right and license to market and resell Plaintiff's contact center software products, software developer kits, and related support services (the "Products"). (Def.'s 56.1 ¶ 4.)  Under the Reseller Agreement, Loxysoft would make a written order for a quantity of the Products it sought from Plaintiff, and Plaintiff would ship the requested Products and provide an invoice to Loxysoft for the price of that order and associated shipping costs.  (*See* Reseller Agreement § 2.2 and Schedule B: Prices and Payment.)

According to the Reseller Agreement, Calltrol had the ability to enable and disable the use of its Products via a Calltrol-furnished dongle.  (Def.'s 56.1 ¶ 6; Reseller Agreement § 1.1.) Paragraph 6.1 of the Reseller Agreement provides a "best efforts" clause, whereby Defendants agreed "to use its  best efforts to promote the sale of the Products."  (Reseller Agreement ¶ 6.1.) Paragraph 6.2 of the Reseller Agreement states that "Reseller may not sell Products except with concurrent sale of reseller products or services of significant value. Reseller may not make any contracts or commitments on behalf of CTV and/or Calltrol."   (Reseller Agreement ¶ 6.1.) Paragraph 6.3 of Reseller Agreement states that "[d]uring the term of this Agreement" LoxySoft AB "will not directly or knowingly indirectly participate in the development or commercialization of software products competitive to the [Plaintiff's] Products." (Reseller Agreement § 6.3.) Paragraph 7.1 of the Reseller Agreement provides "an initial term of two (2) years" which is "thereafter automatically renew[ed] for successive one (1) year periods (each a 'Renewal Period') unless earlier terminated in accordance with the terms" therein, which included "written notice" to the other party.  (Reseller Agreement § 7.1.)  Finally, the Reseller Agreement's Attachment 1, referred to as the "Exclusion" to paragraph 6.3, acknowledges that Defendants have developed and

marketed and intends to develop certain call support systems, but also indicates that "[i]f Reseller begins to develop the Existing Product or any new products into a switching platform or predictive dialer or implements a published API substantially similar to or modeled after the Calltrol products, it will be deemed a violation of the restrictions in paragraph 6.3." (Attachment 1 to Reseller Agreement").[2]

At some unspecified point, Loxysoft began to market and sell its own contact center products and services ("Competing Products") that competed with the products and services it used to purchase and resell from Plaintiff. (Complaint ¶ 20.) Plaintiff became aware that Loxysoft was doing so sometime in 2018. (ECF No. 50 ("Pl.'s 56.1") ¶ 7.) Loxysoft claims that the Reseller Agreement was mutually abandoned in July 2012 after Defendant stopped providing payment to Plaintiff and Defendants were cut off from the Products; however, Loxysoft did not provide Plaintiff written notice that it intended to terminate the Reseller Agreement. (Complaint ¶ 21.) Plaintiff claims that Loxysoft also sold Plaintiff's intellectual property while alleging it originated the products. (Complaint ¶ 22.)

## B. Procedural Background

Plaintiff initiated the instant lawsuit on October 6, 2018. (ECF No. 5.) Defendants Loxysoft and Loxysoft Inc. filed an answer to the Complaint on January 7, 2019. (ECF No. 10.) On March 5, 2019, the Defendants requested leave to brief on a motion to dismiss (ECF No. 15), which the Court granted on January 25, 2021. (ECF No. 19.) The motion to dismiss was fully briefed on April 12, 2021 (ECF No. 20), and the Court rendered a decision on December 16, 2021.

---

[2]     In their reply brief, Loxysoft attempts to cast Plaintiff in a negative light by indicating the Attachment 1 of the Reseller Agreement was not appended to the Complaint and nor did Plaintiff make any allegations of the Exclusion. (*See* ECF No. 48, Defs.' Reply at 9.)  However, both Caltrol and Loxysoft were parties to the Reseller Agreement, and presumably, Loxysoft was aware of the existence of and terms under Attachment 1, or at least it does not deny awareness of Attachment 1.

*See Calltrol Corp. v. LoxySoft AB*, No. 18 CV 9026 (NSR), 2021 WL 5967888 (S.D.N.Y. Dec. 16, 2021).  In the Court's decision, the Court granted dismissal of Plaintiff's tortious interference and Lanham Act claims, without prejudice, but denied dismissal of Plaintiff's breach of contract claim against LoxySoft.  *Id*. at *4.    Plaintiff voluntarily dismissed its causes of action for unfair competition and deceptive business practices under New York State General Business Law § 349.  *See Calltrol Corp.,* 2021 WL 5967888, at 1 n.1.  Plaintiff did not file an amended complaint by the January 18, 2022 deadline set by the Court, and therefore, Plaintiff's tortious interference and Lanham Act claims were deemed dismissed with prejudice.  (ECF No. 27.)

On May 13, 2022, Loxysoft sought leave to file a summary judgment motion on Plaintiff's surviving breach of contract claim (ECF No. 28), which the Court granted on May 17, 2022 (ECF No. 31.)  The parties completed briefing on the summary judgment motion on August 2, 2022. (ECF No. 43.)

The parties are still undertaking discovery and have encountered several discovery disputes.  An order of reference to Magistrate Judge Paul E. Davison ("Judge Davison") was issued on July 18, 2022. (ECF No. 32.)   On August 10, 2022, Judge Davison held a hearing on Defendant's refusal to produce certain financial documents requested by Plaintiff in connection with Loxysoft's sales of non-exempt competing contact center products under the Reseller Agreement.  (*See* ECF No. 66.). On August 26, 2022, Loxysoft moved to have discovery stayed pending the pending summary judgment motion (ECF No. 62), which Magistrate Judge Davison denied on September 16, 2022.  (*See* Minute Entry for Sept. 16, 2022 proceedings.)  Loxysoft was granted leave to make the application for a stay of discovery before this Court, which Loxysoft did so on September 23, 2022 (ECF No. 65.)  On October 5, 2022, this Court denied Defendant's motion to stay and directed Defendants to comply with Judge Davison's discovery orders.  (ECF

No. 67.)  On February 1, 2023, Judge Davison so-ordered a stipulated confidentiality agreement and protective order.  (ECF No. 70.)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc*., 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order).  Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record.  *Kirkland v. Cablevision Sys*., 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.  *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp*., 609 F.3d

537, 545 (2d Cir. 2010).  Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial."  *Anderson*, 477 U.S. at 250.  Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice.  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation") (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

## DISCUSSION

The sole remaining claim in this action is Plaintiff's breach of contract claim against Loxysoft.  (S*ee* ECF No. 27.)  Plaintiff bases its breach of contract claim on the allegations that (i) Loxysoft failed to use best efforts to market Calltrol's products, in violation of paragraph 6.1 of the Reseller Contract; (ii) Loxysoft has sold products as encompassed by the Reseller Contract, without concurrent sale of Plaintiff's products or services, in violation of paragraph 6.2 of the Reseller Contract; and (iii) Loxysoft violated paragraph 6.3 of the Reseller Agreement by directly or knowingly indirectly participating in the development or commercialization of software products competitive to Plaintiff's products.  (Compl. ¶¶ 31–33.)

To prevail on a breach of contract claim, a party must prove the following elements: (1) a valid contract existed between the parties; (2) the defendant breached the contract; (3) the plaintiff performed its obligations under the contract; and (4) the plaintiff was damaged as a result of the

breach. *Clear Choice Enters., Inc. v. Cellebrite USA, Inc.*, No. 14-CV-3372 (ADS) (SIL), 2015 WL 1469298, at *6 (E.D.N.Y. Mar. 28, 2015).

Loxysoft seeks to dismiss the breach of contract claim by arguing that (i) the claim is time-barred) and (ii) Plaintiff has no proof of damages. (*See* ECF No. 45 ("Defs.' Br.")). Plaintiff, on the other hand, argues that the motion for summary judgment should be denied because genuine issues of material fact exist as to (i) whether the contract at issue is still in force; (ii) whether Loxysoft sold competing, non-excluded products in violation of the Reseller Agreement; and (iii) whether the applicable statute of limitations expired on Plaintiff's breach of contract claim. (ECF No. 49 ("Pl.'s Opp.") at 1–8.) Plaintiff also argues that the motion should be denied because Loxysoft has purportedly failed to respond to various discovery requests relevant to determining whether there are genuine issues material of fact. (Pl.'s Opp. at 2, 7.)

## I. Whether Plaintiff's Breach of Contract Claim is Time-Barred

Loxysoft argues that Plaintiff's breach of contact claim is completely time-barred. Pursuant to N.Y. C.P.L.R. § 213(2), the statute of limitations for a breach of contract claim is six years. N.Y. C.P.L.R. § 213(2). "The statute of limitations is an affirmative defense as to which Defendants carry the burden of showing that Plaintiffs failed to plead timely claims." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 435 (S.D.N.Y. 2018) (citing *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)).

Plaintiff filed the instant lawsuit on October 6, 2018, which Loxysoft argues is more than six years after the termination of the contract. (*Id.*) Loxysoft states, without pointing to anything on the record, that the Reseller Agreement terminated on July 10, 2012, which is "when Loxysoft made its last payment to Plaintiff." (Defs.' Br. at 5.) As previously noted in the December 16, 2021 Order and Opinion, this allegation, made broadly and without support on the record, is

insufficient to meet the burden of showing Plaintiff's claim is untimely. *See Calltrol Corp. v. LoxySoft AB*, No. 18 CV 9026 (NSR), 2021 WL 5967888, at *3 (S.D.N.Y. Dec. 16, 2021) (citing *Smith v. City of New York*, 1 F. Supp. 3d 114, 118 (S.D.N.Y. 2013) ("Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly shows the claim is out of time.'") (citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

Loxysoft also points to the discovery made as of the date that the motion papers were filed and indicates that "not one of the documents evidence a relationship between the parties beyond May 2010, much less do they contradict LoxySoft's assertion that the Reseller Agreement and the parties' relationship terminated in July 2012." (Defs.' Br. at 5.) The Court puts little weight on this argument, considering that discovery is still ongoing.

Plaintiff, on the other hand, argues that Loxysoft never terminated the contract and therefore, pursuant to paragraph 7.1 of the Reseller Agreement, the contract is still ongoing.

Paragraph 7.1 of the Agreement states as follows:

"This Agreement shall have an initial term of two (2) years from the date last signed below (the "Initial Term") and shall thereafter automatically renew for successive one (1) year periods (each a 'Renewal Term'), unless earlier terminated in accordance with the terms of this Agreement. Either party may terminate this Agreement effective on the last day of the Initial Term, or the end of the Renewal Term, by serving written notice of such termination on the other party at least ninety (90) days prior to the effective date therof."

Plaintiff argues that Loxysoft never gave the requisite written 90-day notice per paragraph 7.1, nor did Loxysoft advise Plaintiff that it was terminating the agreement. (Pl.'s Opp. at 6 (citing Pl.'s 56.1 ¶¶ 21, 29; and Zimmerman Decl., ¶¶ 8–9, 11–12, Exh. 1.)). Loxysoft, however, argues that paragraph 7.1 of the Reseller Agreement is not enforceable under N.Y. General Obligations Law § 5-903, which states the following:

"No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed

8

renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract."

N.Y. General Obligations Law § 5-903(2).

Whether or not "N.Y. General Obligations Law § 5-903(2) applies, Loxysoft failed to raise this statute as an affirmative defense to its Answer, and therefore the Court need not consider the merits of that defense. (*See* ECF No. 10.) *See FaZe Clan Inc. v. Tenney*, 467 F. Supp. 3d 180, 191 (S.D.N.Y. 2020) ("Tenney also argues in his motion papers that the Gamer Agreement expired on October 27, 2018 for the independent reason that FaZe Clan did not notify Tenney of its intention to renew, as required by N.Y. Gen. Oblig. Law § 5-903. But the Court declines to consider the merits of this defense, finding that Tenney waived it by failing to plead it in his answer.").

Loxysoft also argues that even if paragraph 7.1 was enforceable, the "Reseller Agreement terminated in July 2012 when the parties' conduct evidenced mutual abandonment of the contract." (Defs.' Br. at 5.) Loxysoft only indicates that documents produced as of the date of the briefing only show business interactions between the parties through 2010. (Defs.' 56.1 ¶¶ 17, 20, 30.) However, Loxysoft does not present any sworn declaration from any principal attesting to when payments ended or when Loxysoft's access to Plaintiff's products was cut off, or to what extent, if any, there was a business relationship within the statute of limitations period. *See Celotex Corp.*, 477 U.S. at 323 ("moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations" demonstrating absence of

a material issue of fact) (internal citation omitted).

Given the ongoing production of documents in this case, the Court finds it prudent to refrain at this time from granting summary judgment based on the statute of limitations.

## II.  Damages

Loxysoft argues that the Court should grant summary judgment because Plaintiff fails to show the existence of damages, which is a key element of a breach of contract claim.  (Def. Br. at 3.)  *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 302 (S.D.N.Y. 2017) ("But the Court need not address [other breach of contract elements], because SBBI has offered no evidence that HOM's creation of the HOM SBB Website resulted in any actual damages to SBBI, and thus has failed to raise a genuine issue of material fact on the fourth element of its claim.").  The Court does not find this argument persuasive, particularly as discovery is still ongoing—which Plaintiff repeatedly emphasizes in its papers—and Loxysoft appears to have been uncooperative to various discovery requests that Plaintiff claims will assist in calculating damages. (ECF Nos. 62, 67.)  Moreover, the Court's review of the cases that Loxysoft cites to that grant summary judgment for failure to establish the existence of damages all had completed discovery. *See, e.g., Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*, 333 F. Supp. 2d 131, 149 (S.D.N.Y. 2004) (granting summary judgment where Plaintiff "litigated this case through discovery without identifying any other damages it suffered."); *Hofmann v. Dist. Council 37*, No. 99CIV.8636(KMW)(JCF), 2004 WL 1936242, at *11 (S.D.N.Y. Aug. 31, 2004*), report and recommendation adopted as modified*, No. 99 CIV. 8636 (GEL), 2006 WL 3476747 (S.D.N.Y. Nov. 30, 2006) ("The plaintiffs cannot defeat summary judgment by speculating that they could have presented evidence if the defendants had been forthcoming in discovery. Discovery is over, and the plaintiffs have not established that the defendants withheld relevant information.").

Loxysoft's more compelling argument is that Plaintiff is attempting to assert a damages theory that is not available under its breach of contract claim. Loxysoft argues that Plaintiff relies on a damages theory of disgorgement. (Def.'s Br. at 3.) Loxysoft is correct that under New York law, disgorgement is not an available remedy for a breach of contract claim. *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 268 (S.D.N.Y. 2005) ("insofar as Topps requests disgorgement for breach of contract, as an independent claim sounding in contract law, disgorgement is not an appropriate remedy and Stani's motion for summary judgment in that regard is granted."); *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 CV 293-LTS-RWL, 2019 WL 4735387, at *10 (S.D.N.Y. Sept. 27, 2019) ("damages are generally measured by the plaintiff's actual loss, and not the defendant's profits.")

In its opposition, Plaintiff does not respond to Loxysoft's argument that Plaintiff seeks damages based on disgorgement. Plaintiff instead indicates that "[t]he damages at issue result from defendants' sales of non-Calltrol Contact Center Products during the term of the Reseller Contract in violation of the same." (Def.'s 56.1 ¶ 26; Pl's 56.1 ¶ 26.). Plaintiff also repeats that Loxysoft has failed to comply with discovery requests, which it needs in order to calculate damages. (*See* Pl.'s Opp. at 7 (because "the measure of Plaintiff's damages will be primarily determined from financial documents requested but not yet received from Defendants, Plaintiff cannot quantify its damages in this case until Defendants produces the requested documents.")). At least in the Complaint, Plaintiff does not state it seeks disgorgement, rather, it seeks "[c]ompensatory, direct, consequential[3] and punitive damages." (Compl. ¶ 64b.)

One of Defendant's exhibits appears to shed light as to the theory of damages Plaintiff is

---

[3] One form of consequential damages are lost profits, which may arise "when the non-breaching party suffers loss of profits on collateral business arrangements." *Abraham v. Leigh*, 471 F. Supp. 3d 540, 563 (S.D.N.Y. 2020) (citing *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007)).

trying to raise.  Loxysoft presents an email from Plaintiff's counsel to Loxysoft's counsel, dated

May 9, 2022 (ECF No. 44, Wrobel Decl., Exh. I), where Plaintiff's counsel states:

> In an intellectual property misappropriation case, the available measures of
> damages include plaintiff's lost profits or defendant's unjust enrichment.  *E.J.*
> *Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 447, 105 N.E.3d 301 (2018)
> ("[T]he amount of damages recoverable in an action for misappropriation of trade
> secrets may be measured either by the plaintiff's losses . . . or by the profits unjustly
> received by the defendant").  "To be sure, courts may award a defendant's unjust
> gains as a proxy for compensatory damages in an unfair competition case (*see*
> *Underhill v. Schenck*, 238 N.Y. 7, 17, 143 N.E. 773 [1924]; *Epstein Engineering,*
> *P.C. v. Cataldo*, 124 A.D.3d 420, 421, 1 N.Y.S.3d 38 [1st Dept. 2015])." [citing
> *E.J. Brooks Co*., 31 N.Y. 3d. at 450.]. In this case, plaintiff focuses on the later
> theory of damages, which is dependent on defendant's non-speculative actual past
> actions and profits, rather than the hypothetical profit that plaintiff might have
> earned absent the infringement and misappropriation by defendants."

Wrobel Decl., Exh. I.

This email exhibit suggests that Plaintiff's theory of damages under its breach of contract-

may be misguided.  First, the Court notes that the instant action no longer includes a claim for

unfair competition (which may allow disgorgement), nor does it include a claim for unjust

enrichment.  *See Calltrol Corp.*, 2021 WL 5967888, at *1 n.1 ("Plaintiff also brought causes of

action for unfair competition and deceptive business practices in violation of New York State

General Business Law § 349, however Plaintiff concedes that it is dropping these claims in its

opposition."); *see also Epstein Eng'g, P.C.*, 124 A.D.3d at 421 ("Plaintiff may elect to measure its

damages in this unfair competition action by reference to the profits made by defendants from

clients or business opportunities diverted from plaintiff.")..  Second, the *E.J. Brooks Co. v.*

*Cambridge Sec. Seals* case that Plaintiff cites to in the email did not involve a breach of contract

claim, but rather pertained to New York state law claims for unjust enrichment, unfair competition,

and trade secret misappropriation, *see* 31 N.Y.3d at 446, which are not causes of action present

before the Court.

"The proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach." *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145, 269 N.E.2d 21 (1971); *see also Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 CV 293-LTS-RWL, 2019 WL 4735387, at *10 (S.D.N.Y. Sept. 27, 2019) ("Under New York law, 'the theory underlying damages for breach of contract is to make good or replace the loss caused by the breach.'") (*Scienton Techs., Inc. v. Comp. Assocs. Intnat'l, Inc.*, 703 Fed. App'x 6, 9-10 (2d Cir. 2017)).  Disgorgement would allow Plaintiff to potentially gain more than what could have been provided under the contract—here, for example, allowing Plaintiff to obtain disgorgement damages from Defendants based on its sales of competing products rather than Plaintiff's products might allow it to recover more than what it would have profited from selling its products to Defendants under the Reseller Agreement.  On the other hand, compensatory or consequential damages of lost profits or lost value may be sought under a breach of contract claim. *See, e.g., Washington v. Kellwood Co.*, No. 05CV10034 MHD, 2015 WL 6437456, at *22 (S.D.N.Y. Oct. 14, 2015); *Premier Fla. Auto Sales & Leasing, LLC v. Mercedes-Benz of Massapequa, LLC*, No. 10 CV 4428 DRH WDW, 2013 WL 2177785, at *4 (E.D.N.Y. May 20, 2013) ("Another way of phrasing breach of contract damages is that, under New York law, plaintiffs are entitled to compensatory damages 'necessary to put the plaintiff in the same economic position plaintiff would have occupied had the breaching party performed the contract.'") (citing *3947 Austin Blvd. Assocs., LLC v. M.K.D. Capital Corp.*, 2007 WL 1575265, at *2 (S.D.N.Y. May 30, 2007)).  As mentioned above, Plaintiff has indicated it seeks compensatory and consequential damages in its Complaint.  (Compl. ¶ 64b.)[4]

---

[4]      In addition, "[u]nder New York law, nominal damages are always available in a breach of contract action even if a party cannot prove general or consequential damages."  *Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-CV-1309 (JMF), 2021 WL 293568, at *13 (S.D.N.Y. Jan. 28, 2021) (citing *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 248 n. 10 (2d Cir. 2020); *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90,

Here, there remains a material issue of fact as to whether Defendants were indeed violating the terms of the Reseller Agreement by selling competing products while also selling Plaintiff's products during the statute of limitations period. *See supra*; *see also Halo Optical Prod., Inc. v. Liberty Sport, Inc.*, No. 614CV00282MADTWD, 2017 WL 1082443, at *9 (N.D.N.Y. Mar. 22, 2017) (where Plaintiff established that Defendant sold competing products in violation of the licensing agreements, "the amount that [defendant] owes [plaintiff] for directly ordering those products without Halo's consent is a question of fact that precludes summary judgment as to damages."); *Washington v. Kellwood Co.*, No. 05CV10034 MHD, 2015 WL 6437456, at *12 (S.D.N.Y. Oct. 14, 2015) ("A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he had caused is uncertain."); *id*. ("certainty, as it pertains to general damages, refers to the fact of damage, not the amount.") (citing *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 110 (2d Cir.2007)).

Because Plaintiff has alleged consequential damages in its Complaint, which could be a viable remedy under a breach of contract claim, and because discovery is still ongoing, the Court will not grant summary judgment at this time.

## III.    Failure to Comply with Plaintiff's Discovery Requests

Plaintiff argues that the motion to dismiss should be denied under Fed. R. Civ. P. 56(d) because facts regarding Defendants' sales of allegedly competing products (and the resulting damages) are unavailable to Plaintiff, and Defendants have failed to respond to various discovery

---

95, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993) (stating that "[n]ominal damages are always available in breach of contract actions"); *see also Tradex Europe SPRL v. Conair Corp.*, 2008 WL 1990464, at *5 (S.D.N.Y. 2008) (denying summary judgment regarding breach of contract claim because defendant "fail[ed] to address whether [p]laintiffs may . . . recover nominal damages" even though they failed to produce evidence of any direct or consequential damages); *Magu Realty Co. v. Spartan Concrete Corp.*, 239 A.D.2d 469, 658 N.Y.S.2d 45, 46 (2d Dep't 1997) ("[A]lthough the plaintiffs have failed to demonstrate that they incurred any actual damages resulting from the alleged breach of contract . . . , they may still be entitled to nominal damages to vindicate their rights arising from the alleged breach of contract.").

requests made by Plaintiff that are relevant to determine whether genuine issues of material fact exist as to those issues.  (Pl.'s Opp. at 2, 7.)   Fed. R. Civ. P. 56(d)(1) states that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: defer considering the motion or deny it."  Fed. R. Civ. P. 56(d)(1).

As the record shows and as indicated by Plaintiff, discovery is still ongoing in this case, and there have been disputes before Judge Davison throughout the course of discovery.  (Pl.'s Opp. at 2, 4; *see also* Aug. 10, 2022 Minute Entry; ECF No. 70 (So-Ordered Confidentiality Agreement and Protective Order, dated February 1, 2023.)).

Ordinarily, to avoid summary judgment, the nonmoving party must submit an affidavit or declaration explaining what discovery he needs, and how such discovery will create a triable issue of fact.  *Gomez v. City of White Plains*, No. 13-CV-7750 NSR, 2014 WL 2210646, at *3 (S.D.N.Y. May 23, 2014) (citing Fed. R. Civ. P. 56(d)).  The nonmoving party must also indicate what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful.  *Busher v. Barry*, No. 14-CV-4322 (NSR), 2016 WL 1249612, at *4 (S.D.N.Y. Mar. 28, 2016) (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)); *see also, Young v. Benjamin Dev. Inc*., No. 09–1320–cv, 395 Fed. App'x. 721, 722 723, 2010 WL 3860498 (2d Cir. Oct. 5, 2010) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. Nonetheless, we conclude that the district court committed no error in this case because Young failed to file an affidavit setting forth the essential facts he sought to discover.") (citation omitted); *Crandall v. David*, No. 10-0985-cv, 2012 WL 255329 at *1 (2d Cir. Jan. 30, 2012) ("We review a district court's denial of a motion for further discovery under Fed. R. Civ. P. 56(d) for an 'abuse of discretion' and will not

reverse where a plaintiff has failed to show how the facts sought are reasonably expected to create a genuine issue of material fact.") (citations and internal quotation marks omitted)).

Here, Plaintiff's counsel, Jean-Marc Zimmerman, provides a declaration that describes the production as of July 18, 2022, when the declaration is dated, as well as discovery disputes with Loxysoft that affect its ability to calculate its damages and ascertain the extent of Defendants breach, if any.  (*See* ECF No. 51 (Zimmerman Decl.)).   Plaintiff recounts that on numerous occasions, Defendant has failed to respond to discovery requests, including (i) Plaintiff's discovery requests served on March 23,2022, regarding their alleged sales of competing, non-exempt products made in violation of paragraph 6.3 of the Reseller Agreement (Zimmerman Decl., ¶ 17, Exh. 5 and Exh. 6); (ii) May 20, 2022, to meet and confer to discuss deficiencies in Defendants' responses to Plaintiff's discovery requests (Zimmerman Decl., ¶ 18, Exh.7); (iii) Defendants have also failed to respond to Plaintiff's Rule 30(b)(6) Deposition Notice served on May 22, 2022 (Zimmerman Decl., ¶ 19, Exh. 8); (iv) discovery on confidential and trade secret information had not occurred (Zimmerman Decl., ¶ 7); (v) email discovery had not yet occurred (Zimmerman Declaration, ¶ 13).

The Court finds that Zimmerman's declaration satisfied Fed. R. Civ. P. 56(d).  The declaration sufficiently describes the ongoing discovery and items that remain, including those pertinent to the damages calculation, and issues with Loxysoft responding to discovery request. Therefore, the Court agrees that summary judgment should be denied at this time under Fed. R. Civ. P. 56(d)(1).

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is DENIED. The parties may seek leave to file a second motion for summary judgment upon completion of discovery.

The parties are directed to contact Magistrate Judge Davison to proceed with discovery. Counsel are also directed to notify this Court within three business days upon completion of discovery.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 43.

Dated:   March 15, 2023                              SO ORDERED:
       White Plains, New York

NELSON S. ROMÁN
United States District Judge