```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/24/2025__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CALLTROL CORPORATION,

        Plaintiff,

-against-

LOXYSOFT AB and LOXYSOFT INC.,

        Defendants.

18 CV 9026 (NSR)

OPINION & ORDER

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

  Plaintiff Calltrol Corporation ("Plaintiff") initiated this action on October 6, 2018, against LoxySoft AB and LoxySoft Inc. (together, "Defendants"), alleging breach of contract, tortious interference with prospective economic benefit, unfair competition, false and deceptive practices in violation of Section 43(a) of the Lanham Act, and deceptive trade practices under New York State General Business Law § 349. (ECF No. 5, "Compl.") For reasons stated herein, Plaintiff's motion to strike the Defendants' expert report is GRANTED in part and DENIED in part.

**BACKGROUND**

**A. PROCEDURAL HISTORY**

  Plaintiff filed their complaint on October 8, 2018. (ECF No. 5.) On April 12, 2021, Defendants filed a motion to dismiss (ECF No. 20), and Plaintiff filed a brief in opposition. (ECF No. 24.) The Court rendered a decision on December 16, 2021, granting dismissal of Plaintiff's tortious interference and Lanham Act claims, without prejudice, but denied dismissal of Plaintiff's breach of contract claim against LoxySoft. (ECF No. 26.) Plaintiff voluntarily dismissed its causes of action for unfair competition and deceptive business practices under New York State General Business Law § 349. (*See Id.* at 1 n.1.) Plaintiff failed to timely file an amended complaint, and

1

therefore, Plaintiff's tortious interference and Lanham Act claims were deemed dismissed with prejudice. (ECF No. 27.)

On August 2, 2022, LoxySoft filed a motion for summary judgement (ECF No. 43) and Plaintiff filed a brief in opposition. (ECF No. 49.) The Court rendered a decision on March 15, 2023, denying Defendants' motion for summary judgment. (ECF No. 71.)

### B. FACTUAL BACKGROUND

The following facts are derived from the parties' moving papers and are undisputed unless otherwise indicated. They provide general background for the motion to strike at issue.

Plaintiff sells call center software, hardware products, and related support services. (Compl. ¶ 13.) LoxySoft Inc. is a wholly owned subsidiary of LoxySoft AB. (*Id*. ¶ 4.) In March of 2002, Plaintiff entered into an agreement (the "Reseller Agreement") with LoxySoft AB that granted LoxySoft AB a license to market and resell certain call center products for which Plaintiff was a licensed distributor. (*Id*. ¶ 14.) LoxySoft AB agreed to purchase call center software products, software developer kits, and related support services from Plaintiff. (*Id*. ¶ 15.) The Reseller Agreement ("RA") states that "[d]uring the term of this Agreement" LoxySoft AB "will not directly or knowingly indirectly participate in the development or commercialization of software products competitive to the [Plaintiff's] Products." (*Id*. ¶ 16.) The RA also provides "an initial term of two (2) years" and "thereafter automatically renew[ed] for successive one (1) year periods (each a "Renewal Period") unless earlier terminated in accordance with the terms" therein, which included "written notice" to Plaintiff. (*Id*. ¶¶ 17-18.)

Plaintiff alleges that Defendants began marketing and selling their own call center products and services ("Competing Products") to Plaintiff's customers, directly competing with the products and services they previously purchased and resold from Plaintiff. (*Id*. ¶ 20.) Plaintiff

2

further asserts that Defendants failed to provide written notice of their intent to terminate the RA. (*Id.* ¶ 21.)

To refute Plaintiff's claims, Defendants offered the declaration of their purported expert, Regis J. Bates Jr. ("Bates"). (ECF No. 156-1, "Bates Report".) Plaintiff submitted a motion to strike Defendants' expert report (ECF No. 148) alongside a corresponding brief in support of the motion. (ECF No. 153, "Br.".) Defendants filed a memorandum in opposition to the motion. (ECF No. 150, "Opp.".) and Plaintiff subsequently filed a reply in support of its motion. (ECF No. 156, "Reply".)

## LEGAL STANDARD

The standards governing the admissibility of expert testimony are set forth in Fed. R. Evid. 702, which provides that "[a] witness ... qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if ... the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The standards have been further clarified by the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999). In *Daubert*, the Supreme Court defined the role of the district court as that of a gatekeeper charged with the task of deciding whether an expert's scientific testimony satisfies Rule 702's general requirements of reliability and relevance. *Daubert*, 509 U.S. at 597. Originally intended to screen out "junk science," *Daubert* has been extended to both technical and other specialized expert evidence. *See Kumho*, 526 U.S. 137.

Fed. R. Evid. 702 imposes a three-part inquiry on the trial court. First, the trial court must determine, as a threshold matter, whether the proposed witness is qualified as an expert. *Baker v.*

*Urban Outfitters, Inc.,* 254 F. Supp. 2d 346, 352 (S.D.N.Y. 2003). A witness may qualify based on "knowledge, skill, experience, training, or education." *Nimely v. City of New York*, 414 F.3d 381, 395 n.11 (2d Cir. 2005). If the witness lacks sufficient qualifications, the court need not reach the relevance or reliability analysis. *See Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004) (finding the Daubert reliability analysis "superfluous" where expert had "meager qualifications to offer the opinions".)

Courts generally construe the qualification requirement liberally. *See Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04CIV.7369(LTS)(HBP), 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006). The primary question is "whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth." *Hillaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 233-34 (E.D.N.Y. 2014). The Court considers the "totality of the witness' qualifications" in its analysis. *Atl. Specialty Ins. Co. v. Gold Coast Devs., Inc.,* No. 05-CV-4863 JFB WDW, 2008 WL 974411, at *6 (E.D.N.Y. Apr. 8, 2008). Nonetheless, "[a]n expert qualified in one subject matter does not thereby become an expert for all purposes. Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Rule 702." *523 IP LLC v. CureMD.Com,* 48 F. Supp. 3d 600, 642 (S.D.N.Y.2014) (quoting *Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp. 2d 558, 642 (S.D.N.Y.2007).

If the court is satisfied that the proposed witness does indeed qualify as an expert, then the court must next determine whether the expert's opinion is reliable and "relevant to the task at hand". *Daubert*, 509 U.S. at 597. Ultimately, "[t]he party proffering the expert has the burden to demonstrate by a preponderance of the evidence that its expert witness satisfies these criteria." *R.F.M.A.S., Inc. v. So,* 748 F. Supp. 2d 244, 253 (S.D.N.Y. 2010) (citing *Zaremba*, 360 F.3d at 358)); *Washington v. Kellwood Co.,* 105 F. Supp. 3d 293, 303–04 (S.D.N.Y. 2015). In assessing

4

the reliability of a potential expert's opinion, the court must, "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho,* 526 U.S. at 137. Thus, the Court must analyze the proffered expert's methodology, not their conclusions.

District courts begin with the presumption that expert evidence is reliable. *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV5936KMW, 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011); *see also* Fed. R. Evid. 702 advisory committee's notes ("[A] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule."). While *Daubert* sets forth four factors[1] for assessing reliability, they are not a "definitive checklist or test" *Amorgianos v. Amtrak*, 303 F.3d 256, 266 (quoting *Daubert*, 509 U.S. at 593). The 702 inquiry is flexible and a "trial court *may* consider one or more of the more specific factors that *Daubert* mentioned [but that] *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case," *Kumho,* 526 U.S. at 141. In fact, "the trial judge has 'the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether* that expert's relevant testimony is reliable.'" *Zaremba,* 360 F.3d at 358 (quoting *Kumho,* 526 U.S. at 152). In cases like this, where Bates relied primarily on experience, the *Daubert* framework is of limited use. See *Liriano v. Hobart Corp.*, 949 F. Supp. 171, 177 (S.D.N.Y. 1996) ("Daubert applies to novel methodologies or techniques, not to opinions based

---

[1] Under the four *Daubert* factors, a district court must determine "1) whether the theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique has been met with widespread acceptance." *See Daubert,* 509 U.S. at 593-94.

5

solely on experience or training."). Where an opinion reflects "years of accumulated learning and insight," reliability should be assessed without rigid reference to the *Daubert* factors. (*Id.* at 178.)

Finally, Rule 702 requires that an expert's opinion "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Evidence meets this standard if it has a "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Even relevant evidence, however, may be stricken under Rule 403, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Because Rule 702 favors admissibility, doubts about the usefulness of expert evidence should generally be resolved in favor of inclusion unless strong countervailing considerations warrant exclusion. *See In re Zyprexa*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007); *United States v. Jakobetz,* 955 F.2d 786, 797 (2d Cir. 1992).

## DISCUSSION

### A. Bates's Qualifications

The Court finds that Bates's qualifications are sufficient to establish him as an expert in the telecommunications and communications software industry. Thus, he may opine on the parties' call center technologies, including predictive dialers and related software. The Court, however, does not find Bates qualified to opine on contract law, economics, or business matters. Therefore, those paragraphs in the expert report in which Bates opines on Defendants' business relationship with Plaintiff (¶ 45 and ¶ 61), addresses the profitability of Calltrol's business (¶¶ 47, 49-52), and analyzes Defendants' "best efforts" under the RA (¶¶ 84–85) are stricken.

Bates's background is as follows. Bates has over 50 years of experience in the telecommunications systems, call center products, and predictive dialers. (*See* Opp. at 6.) He is the founder of a full-service consulting and training firm specializing in telecommunications and

computer convergence, has authored numerous books on telecommunications technologies—including *Voice and Data Communications Handbook* for McGraw-Hill—and served as a telecommunications manager (or in an equivalent role) for over 14 years across four organizations. (*See* Bates Report at ¶¶ 9-12, 14-18.) Bates has also contributed to the design and construction of telecommunications systems, implemented standards-based documents in his consulting practice, and conducted telecommunications trainings for carriers like Verizon and AT&T as well as large telecommunications equipment manufacturers such as Cisco and Nokia. (*Id.* at ¶¶ 4, 19-20.) Earlier on in his career, Bates served as a Captain in the U.S. Army Signal Corps for 6 years, where he gained training in antenna design, engineering concepts, telephony, and switching systems. (*Id.* at ¶ 13.) Further, Bates holds a bachelor's degree in business management from Stonehill College, completed coursework towards a Master of Administration, and has been retained as an expert in more than 50 cases, including matters involving patent infringement, trade secrets, and data communications. (*See* ECF No. 156-2, Bates C.V. at 2, 6-16.)

In his report, Bates averred that LoxySoft replaced Calltrol's technology with publicly available tools, wrote and did not develop proprietary switching platforms or predictive dialers, and did not replicate Plaintiff's Application Programming Interface ("API"). (Bates Report at ¶¶ 63-78.) LoxySoft accessed only the limited code permitted under the RA. (*Id.* at ¶¶ 79-83.) He further asserted that Calltrol's product was increasingly obsolete and prone to failure, which made it commercially unreasonable for LoxySoft to continue aggressively marketing its product. (*Id.* at ¶¶ 34-48.) Bates concluded his report by opining that LoxySoft did not misappropriate Calltrol's trade secrets or reverse engineer its product.

Plaintiff seeks to strike Bates's opinion on the above-mentioned topics, arguing that Bates is "uniquely unqualified" to testify on the parties' technologies. (*See* Reply at 9.) Plaintiff contends

that Bates is not a "qualified expert in software, software development, management of a software company, reseller agreements, or predictive dialers," that he "proffers opinions well beyond his expertise," and that, while he may be an expert on subjects he has authored or taught, he lacks specific experience in the above-mentioned fields. (*See* Br. at 9.) Specifically, Plaintiff argues that while Bates may be experienced in "telecommunications systems in general", his C.V. fails to reference or demonstrate that he has "experience in software development or with dialers as components of an outbound call center of any sort." (Reply at 3.)

The Court is not persuaded by Plaintiff's arguments and finds Bates's qualifications are sufficient to allow his opinion on the parties' call center technologies, including predictive dialers and related software. The parties' systems operate directly on, and interact with, telecommunications infrastructure, including Private Branch Exchange ("PBX") systems and call routing platforms. (*See generally* Bates Report Figure A & B & ¶¶ 25, 34, 36.) Bates's expertise in voice communication technologies, network integration, and call management allows him to evaluate these products' operational feasibility, technical performance, and limitations. While Bates is not specifically an expert in predictive dialers—a feature present in both products—such dialers are widely used in the telecommunications industry, a field in which Bates is an expert in. When an expert has expertise or qualifications, in a "general field closely related to the subject matter in question, the court will not strike the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Deutsch v. Novartis Pharm. Corp.,* 768 F. Supp. 2d 420, 425 (E.D.N.Y.2011) (quoting *In re Zyprexa* 489 F. Supp. 2d at 282); *see, e.g., Peretz v. Home Depot Inc.,* No. 08-CV-4106BMC, 2009 WL 3124760, at *3 (E.D.N.Y. Sept. 29, 2009) (allowing expert testimony where the "product at issue has sufficient similarities to those with which the expert has worked and had experience developing so that the expert's

8

experience is relevant."); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 691 F. Supp. 2d 448, 461 (S.D.N.Y. 2010) (concluding that while the expert "may not be the world's leading expert" in the relevant field, challenges to his qualifications go to the weight and credibility of his testimony, not its admissibility). Any challenges to Bates's opinion on these topics go to its weight, not its admissibility. Accordingly, the Court finds Bates qualified to opine on the parties' call center technologies, including predictive dialers and related software.

However, Bates is not qualified to opine on economics or business matters. In his report, Bates highlighted why Calltrol's business was no longer profitable, collapsing because of declining sales, staff reductions, and a failing business model. (Bates Report at ¶¶ 47, 49-52.) He further asserted that LoxySoft's relationship with Calltrol deteriorated because customers shifted to LoxySoft's new call center model and the absence of communications or billing proved the business relationship with Calltrol had ended. (*Id.* at ¶¶ 45, 61.) Plaintiff challenges Bates's foregoing opinions, contending that Bates is not a "qualified expert on business, economics, competition…" and is neither a business consultant nor an economist. (Br. at 9.) Plaintiff further argues that Bates's opinions on Calltrol's business and its impact on call center operations and the economy should be stricken because it is outside the scope of his expertise. (Br. at 24.) The Court agrees. Although Bates holds an undergraduate degree in business administration and completed coursework toward an MBA, he has little, if any, practical experience in economics or business. (*See* Bates Report at ¶ 7.) Bates admitted in his deposition that he is not an economist[2], and his background does not establish the specialized knowledge necessary to opine on Calltrol and LoxySoft's business relationship and Calltrol's profitability. Determining that Bates is qualified

---

[2] *See* Bates Deposition Transcript ("Bates Dep. Tr.") at 42:7-8 ("He's not an economic expert"); 76:2-5 ("I'm not an economist. I'm a technical person. I don't deal with the economics the way you're describing it, so it's nothing I want to opine on."); 251:4-6 ("I won't opine on that because I wouldn't opine earlier on the elasticity because that's more of an economics function.").

9

to opine on the parties' call center products and their software development "does not provide [him] with *carte blanc* to opine on every issue in the case." *Davis v. Carroll*, 937 F. Supp. 2d 390, 413 (S.D.N.Y. 2013). Because Bates lacks the distinct expertise required to opine on economic and business matters, his opinion on these topics lacks a reliable foundation. Accordingly, the Court strikes that portion of Bates's report opining on Calltrol and LoxySoft's business relationship (Bates Report at ¶¶ 45, 61) and Calltrol's profitability as a business. (*Id.* at ¶¶ 47, 49-52.) Similarly, the Court precludes Bates from proffering any opinion testimony on these topics.

The Court likewise finds Bates unqualified to opine on contractual obligations, including Defendants' "best efforts" under the RA. (*Id.* at ¶¶ 84–85.) In Bates's report, he opined on LoxySoft's "best efforts" to market Calltrol's products, but Plaintiff contends that he is not an expert on non-compete agreements and "is not qualified as an expert to opine on the activities required to meet a best efforts obligation." (Br. at 24.) The Court concurs. Aside from serving as an expert in only two breach-of-contract disputes, Bates is not a contractual expert, and contract interpretation is not a proper subject for an expert to opine on. *See, e.g., Marx & Co. v. Diners' Club Inc.,* 550 F.2d 505, 510 (2d Cir. 1977) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony."); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. NV.,* 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1988) (prohibiting expert testimony because expert "would inevitably have to discuss his construction of the contract and the parties' obligations thereunder"); *Securities and Exchange Commission v. Gruss,* 245 F. Supp. 3d 527, 594 (S.D.N.Y. 2017) (excluding expert opinion where expert opined on whether a contract was violated); *see also Carl Zeiss Meditec, Inc. v. Insight Photonics Sols., Inc.,* No. 20-CV-7667 (NSR), 2023 WL 8113657, at *5 (S.D.N.Y. Nov. 21, 2023) (finding that an interpretation into a party's "best efforts" did not require expert testimony in a

10

breach of contract claim). Thus, any opinion Bates offers on contract interpretation would improperly usurp the jury's role and exceed the permissible scope of expert testimony. Accordingly, the Court strikes these portions of Bates's report which opine on LoxySoft's "best efforts" under the RA (Bates Report at ¶¶ 84–85) and precludes any opinion testimony on said topic.

In sum, neither Bates's "skills, experience, training, [n]or education" provide him with specialized knowledge regarding a business's profitability and viability, contractual interpretation—including a party's "best efforts"—or the nature of the business relationship between two parties. *See R.F.M.A.S.*, 748 F. Supp. 2d at 268 (finding that the experts lacked the specialized knowledge to determine why there was a decline in designer's sales to retail chain.) Because Bates lacks the requisite expertise in economics and business, and expert opinion is unnecessary for contract interpretation, the Court strikes portions of Bates's report addressing Calltrol and LoxySoft's business relationship (Bates Report at ¶¶ 45, 61), Calltrol's profitability (*Id.* at ¶¶ 47, 49–52), and LoxySoft's "best efforts" under the RA. (*Id.* at ¶¶ 84–85.) Nonetheless, based on his education and five decades of experience, Bates is qualified as an expert in the telecommunications and communications software industry and may testify on the parties' call center technologies, including predictive dialers and related software.

### B. Reliability of Bates's Expert Opinion

The Court concludes that Bates's analysis is sufficiently reliable under Rule 702's flexible standards to permit his opinion on the parties' call center technologies, including predictive dialers and related software. In forming his opinion, Bates relied on his extensive experience in the telecommunications industry to analyze the distinctions between LoxySoft's and Calltrol's software as well as the absence of any competing call center product from LoxySoft.

11

First, Bates conducted a detailed breakdown of the predictive dialer capabilities included in the RA between the parties, using diagrams to illustrate the configurations of LoxySoft's system when integrated with Calltrol's software and the operability of Calltrol's platform itself. (Bates Report. at ¶¶ 27-37.) He also presented a second diagram to detail LoxySoft's model change in response to advancements in the call center industry, and a third diagram to highlight this broader industry shift away from old call center technologies to cloud-based services. (*Id.* at ¶¶ 39-43.) Bates then explained how LoxySoft built its system on a publicly available algorithm and an open-source communications framework, rather than relying on Calltrol's proprietary API or source code. (*Id*. at ¶¶ 79-83.) Finally, Bates reviewed Calltrol's public website, along with the deposition testimony and affidavits from Calltrol employees[3], to demonstrate the obsolescence of Calltrol's product, that prompted LoxySoft to transition to a more advanced internet-based platform. (*Id*. at ¶¶ 79-83.)

While Bates arguably could have done more to analyze the parties' call center software and could have provided more support for the conclusions he reached, the Court will not strike his opinion on those grounds. *See Alfa Corp. v. OAO Alfa Bank,* 475 F. Supp. 2d 357, 366 *(S.D.N.Y. 2007)* (permitting expert testimony where support for the expert's opinion was "somewhat thin," but "not so weak as to be simply inadequate to support the conclusions reached" (internal quotation marks omitted)). Any such shortcomings in Bates's methodology go to the weight of his opinion, not its admissibility. *See Figueroa v. Bos. Sci. Corp.*, 254 F. Supp. 2d 361, 368 (S.D.N.Y. 2003)

---

[3] *See* David Friedman Deposition Transcript at 24:17-22 ("Q. If I were to go to Calltrol's address right now, what would be there? A. The address I gave you is just what we use for mail and stuff like that. Q. So is it a brick and mortar place? Is it a 22 postal box?"); 116:15-22 (Q: "But the website has not been updated for you estimated five years, I believe it was? A. It could be. Q. So if someone saw Calltrol's website and was interested in purchasing Calltrol's products, how would they get in contact with Calltrol? A. That's a great question. We don't really promote for our website..."); *see also* Wai Wu Deposition Transcript at 25:20-22 ("Q. How many other people work at Calltrol at present other than you and David Friedman? A. It's hard to say. I don't know.").

(holding that challenges to an expert's lack of testing, data, or textual support affect weight, not admissibility). Defendants, however, remain free to probe any such weaknesses on cross-examination. *See Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d at 282 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (internal quotation marks omitted)). Furthermore, because Bates's report is based on his years of experience rather than formulaic testing or methodology, the Court will not strike his report for failing to meet the *Daubert* factors. *See Liriano*, 949 F. Supp. at 177. Considering Bates's methodology detailed above, the Court finds that Bates applied a reasoned, experience-based methodology consistent with Rule 702's standards, rendering his analysis and technical opinions sufficiently reliable for the jury's consideration.

In sum, Bates's methodology is sufficiently reliable to admit his expert opinion for which he is qualified, except for the portions of his report and prospective testimony on business, economics, and contracts. (Bates Report at ¶¶ 45, 47, 49–52, 61, 84–85.)

C. **Relevance of Bates's Expert Opinion**

Mr. Bates's expert report is relevant. Plaintiff contends that Bates's discussion in ¶¶ 63-71 of his report, surrounding LoxySoft's creation of a switching platform is irrelevant because Calltrol did not allege that LoxySoft's switching platform breached the RA. (Br. at 20-21.) Plaintiff likewise contends that Bates's opinion regarding LoxySoft's development or use of an API (Bates Report at ¶¶ 75–78, 79–83) is irrelevant to the alleged breach of the RA, as Calltrol neither claims that LoxySoft "misappropriated trade secrets or reverse engineered its software," nor that it "implemented a published API similar to Calltrol's products." (Br. at 24.)

13

On this point, Plaintiff contradicts himself. The Complaint expressly alleges that LoxySoft's "development, implementation, and/or use of the Competing Products involved the use and misappropriation of Calltrol Confidential Information, Trade Secrets, and Copyrights, the use of which is restricted under Section 4.0 of the Reseller Contract." (Compl. ¶ 29.) It further alleges that LoxySoft violated ¶ 6.3 of the RA by "directly or knowingly indirectly participat[ing] in the development or commercialization of software products competitive to the [Calltrol] Products." (*Id*. ¶ 32.) Bates's opinion on LoxySoft's switching platform and API therefore go to the heart of the alleged breach. Moreover, Bates explains at the outset of his report that his references to "LoxySoft" encompass both LoxySoft AB and its wholly owned subsidiary, LoxySoft Inc. Accordingly, his analysis extends to both entities and addresses the very conduct Plaintiff identified in its Complaint. Plaintiff cannot now, at the briefing stage, disavow those allegations to strike otherwise relevant expert opinion.

Accordingly, Mr. Bates's expert report is relevant. His report details how LoxySoft used publicly available tools and technology, including an open-source communication framework, and confirms that LoxySoft did not have access to "any of the source code for the Calltrol products" (Bates Report ¶ 79). This directly refutes Plaintiff's claim that LoxySoft misappropriated Calltrol's proprietary information to develop a competing or derivative product. Bates further details technical differences between Calltrol's product and the technologies used by Defendants, demonstrating that Defendants' development reflected "industry advancements, not competition." (Opp. At 12.) Because Bates's report directly addresses the conduct alleged in the Complaint and provides clear technical analysis, its probative value is high and substantially outweighs any minimal risk of unfair prejudice, confusion, delay, or the jury being misled under Rule 403. Thus,

Bates's report—excluding areas outside of the scope of his expertise—is sufficiently relevant and admissible.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike LoxySoft's Expert Report is GRANTED in part and DENIED in part. Defendants' expert, Regis J. Bates Jr., may opine on the parties' call center technologies, including predictive dialers and related software. However, paragraphs in which Bates opines on Defendants' business relationship with Plaintiff (Bates Report at ¶ 45 and ¶ 61), addresses the profitability of Calltrol's business (*Id.* at ¶¶ 47, 49-52), and analyzes Defendants' "best efforts" under the RA (*Id.* at ¶¶ 84–85) are stricken.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 148. At the October 7, 2024 conference, the respective parties informed the Court that they wished to file dispositive motions. Accordingly, the Court sets the following briefing schedule: Plaintiff is to serve (not file) its summary judgment ("SJ") motion on or before November 10, 2025; Defendants are to serve (not file) their opposition to Plaintiff's SJ motion and cross-SJ motion on or before December 29, 2025; Plaintiff is to serve (not file) its opposition to the Defendants' cross-SJ and its reply in support of its motion on or before February 9, 2026; and Defendants are to serve their reply to their cross-SJ motion on or before February 24, 2026. All motion papers shall be filed on February 24, 2026. Counsel are directed to provide the Court with two paper courtesy copies and one pdf version (by email) as the respective motion papers are served.

This constitutes the Court's Opinion and Order.

Dated: September 24, 2025
    White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge